IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| WHITECAP INVESTMENT CORP. d/b/a/ ) <br> PARADISE LUMBER, ) <br> ) <br>    Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PUTNAM LUMBER & EXPORT CO., ) <br> PUTNAM FAMILY PROPERTIES, INC., ) <br> GREAT SOUTHERN WOOD ) <br> PRESERVING, INC., MIKE NOBLE, XYZ ) <br> CORP., JOHN DOE, and JANE DOE, ) <br> ) <br>    Defendants. ) <br> _____ ) | Civil No. 2010-139 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion to intervene [DE 143] pursuant to Fed. R. Civ. P. 24 filed by non-party applicants Cary Chapin and Barbara Douma, Emily Bratton, John and Dean Baldwin, Terry R. Witham, Ann McCrave, Jeffery McCrave, Celso Principaal, Harry Eisener and Cynthia Sauers, Elisa Adams, Denise and Truman Barbier, and Jean and Stephen Cottrell (collectively, "the applicants"). The applicants' motion is opposed by Whitecap Investment Corp. d/b/a Paradise Lumber ("Whitecap") [DE 154], Putnam Lumber & Export Company ("Putnam Lumber"), Putnam Family Properties, Inc., ("collectively, "the Putnam Entities") and Mike Noble ("Noble") (Noble and the Putnam Entities are collectively, "Putnam") [DE 153] and Great Southern Wood Preserving, Inc. ("Great Southern") [DE 156].

      **I.**  **BACKGROUND**

On December 29, 2010, Whitecap brought the underlying action against defendants who allegedly manufactured, produced and/or distributed defective wood products, which Whitecap

bought and in turn sold to its retail customers in the U.S. Virgin Islands. Pl.'s Compl. ¶ 11 [DE 1]. In particular, Whitecap alleges Great Southern improperly treated wood products on behalf of Putnam – lumber wholesalers – which in turn sold the defective wood products to Whitecap. *Id*. ¶¶ 4, 12, 32. Whitecap asserts causes of action for breach of contract, breach of warranty, negligence, strict liability, contribution, and declaratory judgment against the defendants.[1]

Whitecap alleges that as a result of the defective wood products, some of Whitecap's customers, including the applicants, have experienced premature rotting and decay of the wood. Whitecap's customers have made claims to Whitecap for damages they incurred as a result of the allegedly defective wood, including "claims for the rebuilding costs of structures built with the defective wood products, claims for damages to structures built with the defective wood products, claims for emotional distress, loss of use, loss of rents and other claims." *Id*. ¶ 28. Whitecap has settled some but not all customer claims. *Id*. ¶ 72.

On July 6, 2011, the Court entered a trial management order ("TMO") setting trial in this matter for March 4, 2013 [DE 34]. On August 28, 2012, the Court amended the TMO, setting December 15, 2012, December 31, 2012 and January 20, 2013 deadlines for filing dispositive motions, completing discovery and submitting any motions to exclude or to limit expert testimony, respectively. [DE 141].

On August 31, 2012, the applicants filed the instant motion [DE 143] and an attached proposed complaint. The proposed complaint identifies the same causes of action against defendants as those contained in counts I through IV of Whitecap's complaint: (1) breach of

---

[1] Whitecap also asserted causes of action for fraudulent inducement/misrepresentation (Count VII) and Civil Conspiracy (Count VIII) against the defendants. On March 8, 2012, the Court dismissed both counts as to Putnam and directed Great Southern to submit a brief supporting its request to join in Putnam's motion to dismiss. [DE 73]. Subsequently, Great Southern filed a motion to dismiss [DE 78], which is presently pending before the Court.

contract (count I); (2) breach of warranty (count II); (3) negligence (count III); and (4) strict liability (count IV). *See* Applicants' Mot., Ex. 1 [DE 143-1]. Similarly, the applicants seek damages resulting from the premature rotting and decay of the wood product treated by Great Southern and distributed by Putnam. On September 25, 2012, the applicants filed a second proposed complaint with their consolidated reply to the defendants' responses. Applicants' Reply, Ex. A [DE 163-1]. The second proposed complaint adds Nancy and Joseph Nemeth and Irene Patton as additional applicants and contains corrections to "inaccuracies in the proposed complaint." Applicants' Reply at 1 n.1. On October 1, 2012, the applicants filed a third proposed complaint, alleging the same causes of action identified in the original proposed complaint. The applicants did not explain the changes prompting the third filing of a proposed complaint.[2]

## II. DISCUSSION

The applicants move to intervene as matter of right or, in the alternative, for permissive intervention, pursuant to Rule 24 of the Federal Rules of Civil Procedure. The party seeking to intervene bears the burden of demonstrating that intervention is appropriate. *See* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.) (stating the applicant bears the burden of establishing its right to intervene and failure to establish any one of the criteria under Rule 24(a) is sufficient grounds to deny the motion); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994) (burden of proving all four elements under Rule 24(a) "falls on the applicant"); *see In re Budeprion XL Mktg. & Sales Litig.*, 2012 U.S. Dist. LEXIS 135313, at *13 (E.D. Pa. Sept. 20, 2012) (stating "[w]hether to allow permissive intervention is left to the discretion of the trial court with the burden resting on the entity seeking to intervene") (citing

---

[2] Also on October 1, 2012, the applicants instituted a separate lawsuit in federal court against Great Southern and the Putnam Entities for damages arising from the manufacture, production and distribution of hazardous and defective wood products. *See Chapin v. Great Southern*, Civil No. 2012-77.

*Hoots v. Pennsylvania*, 672 F.2d 1133, 1135-36 (3d Cir. 1982)). Regardless of whether a non-party utilizes the mandatory or permissive mechanism for intervention, "[a] motion to intervene . . . must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). The court must accept as true the non-conclusory allegations made in support of a motion to intervene. *See Olympic Sports Data Servs. v. Maselli*, 2008 U.S. Dist. LEXIS 103546, at *5 (E.D. Pa. Dec. 22, 2008) (stating "[t]he court is to accept the movant's motion[] and pleadings as true to the extent they are non-conclusory and well-pleaded") (collecting cases).

"An application to intervene, whether of right or by permission, must be timely under the terms of Rule 24." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Accordingly, the Court addresses this factor first.

A.  **Timeliness of Intervention Application**

Timeliness is "measured from the point at which the applicant knew or should have known, of the risk to its rights." *General Star Indem. Co. v. Virgin Islands Port Auth.*, 224 F.R.D. 372, 375 (D.V.I. 2004); *see also Alcan Aluminum, Inc.*, 25 F.3d at 1182 (explaining timeliness should be "measured from the point which an applicant knows, or should know, its rights are directly affected by the litigation" and "not . . . from the time the applicant learns of the litigation"); *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (to determine whether a would-be intervenor applicant acted promptly, courts consider "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties"). However, an application to intervene is not made untimely by "the mere lapse of time." *General Star*, 224 F.R.D. at 375 (citing Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7C Federal Practice & Procedure Civil 2d § 1916 (1986)). Rather, timeliness is

determined by looking at the totality of the circumstances. *Alcan Aluminum, Inc.*, 25 F.3d at 1181 (stating "timeliness is not just a function of counting days") (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)).

In deciding whether a motion to intervene is timely, the following factors are considered: (1) the stage of the proceedings reached when the movant seeks to intervene, (2) the prejudice the resulting delay might cause to other parties, and (3) the reason for the delay. *See Gov't of the V.I. v. Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *7 (D.V.I. July 26, 2010) (citing *Choike v. Slippery Rock Univ.*, 297 Fed. Appx. 138, 140 (3d Cir. 2008)). Whitecap and Putnam argue the applicants' motion is untimely because the litigation is in an advanced stage, prejudice will result to the existing parties and the delay in filing the instant motion is unjustified.[3]

1.  Stage of the proceedings

"Whether the litigation has reached a stage that is too advanced for a motion to intervene to be deemed timely depends on the circumstances of each particular case." *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 528 (2012) (collecting cases). In considering the stage of the proceedings, the court considers the following timeframes: (1) complaint was recently filed; (2) discovery has begun but is not yet closed; (3) "the end of discovery/the filing of dispositive motions;" (4) "the eve of and/or beginning of trial;" and (5) the "final stage, generally with the entry of a final order." *Anthony*, 56 V.I. at 528-29. Here, although the record reveals that discovery is ongoing, this matter cannot be said to be in the early stages as mediation was attempted [DE 56] and TMO deadlines have either passed or are fast approaching. In particular,

---

[3] Great Southern's two-page response does not discuss the factors relevant to Rule 24 with the exception of arguing that intervention "would further complicate logistics and discovery in the present matter, as thousands of documents have already been produced, several depositions have been completed, and several depositions are scheduled for later this month [September]." Great Southern's Resp. ¶ 3 [DE 156].

the November 1, 2012 deadline for expert discovery has passed,[4] dispositive motions are due by December 15, 2012, discovery must be completed by December 31, 2012 [DE 141] and trial is set for March 4, 2013 [DE 34]. Moreover, motions for summary judgment have been filed by Putnam Family Properties [DE 94], Noble [DE 177] and Putnam Lumber [DE 197].

2.  Prejudice to the parties

As for the prejudice factor, "the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 370 (3d Cir. 1995). Here, the parties have undertaken significant discovery. *See* Pl.'s Resp. at 4 [DE 154] (stating the parties have exchanged in excess of 15,000 pages of documents and taken in excess of thirty-six hours' worth of depositions); *see also* Defs.' Resp. at 4 (explaining each of the parties has produced "several thousand pages of documents" and conducted numerous depositions, experts' reports have been produced by plaintiff and defendants are finalizing their experts' reports). Allowing intervention will result in further delay in these proceedings in order to allow additional discovery, or to duplicate discovery already taken, which will prejudice the parties, particularly in terms of attorneys' fees and legal expenses. Further, the final adjudication of this dispute will also be unduly delayed.

3.  Reason for the Delay

In their motion, the applicants provide no reason for the timing of the filing of their motion. In fact, the applications' motion consists of a nine conclusory paragraphs, and fails to cite even one case in support of its motion that intervention is one of right or permission. *See*

---

[4] On October 31, 2012, Putnam filed a motion to extend the time for their identification of experts and production of expert reports and materials, which is pending before the Court. [DE 187].

*Olympic Sports Data Servs.*, 2008 U.S. Dist. LEXIS 103546, at *5. It is not until the reply brief that the applicants even discuss timeliness.[5] In particular, in response to arguments by Whitecap and Putnam that the applicants "knew or should have known of the risk to their rights" no later than March or April 2011,[6] the applicants contend "[s]everal" of them only learned of this lawsuit "when they were deposed on or about May 1, 2012" in regards thereto. Applicants' Reply at 3 & Ex. C (April 23, 2012 letter to Douma regarding the scheduling of her deposition in this matter) [DE 163-3]. The applicants argue further that they "did not know and appreciate the extent of the hazardous nature of the wood products until after they signed releases [in exchange for replacement of the hazardous wood products] and they discovered the premature rot was continuing to spread despite the removal of the hazardous, defective wood products with rot." Applicants' Reply at 3. These arguments do not really address the pertinent issue of when applicants knew of a risk to their rights posed by this litigation, as opposed to whether they had a

---

[5] As the court in *General Ins. Co. of Am. v. Clark Mall Corp.*, 2010 U.S. Dist. LEXIS 21526 (N.D. Ill. Mar. 9, 2010) remarked,

> Waiting to make the case until the reply can effectively result in a one-sided presentation, which is inconsistent with the premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving the best for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides.

*Id.* at *11; *see Steele v. Aramark Corp.*, 2012 U.S. Dist. LEXIS 132206, at *14-15 (D.N.J. Sept. 14, 2012) (noting plaintiff's belated argument in a reply brief "deprived the [d]efendant of any meaningful opportunity to respond" and refusing to consider said argument in deciding motion before court).

[6] Whitecap argues Chapin, Douma, Bratton, Witham, Mr. McCrave, and Eisener knew about this matter no later than April 2011. *See* Pl.'s Resp. at 3 (citing a letter from Chapin and Douma to Whitecap regarding rotten wood and Whitecap invoices to Bratton, Witham, Mr. McCrave and Eisener for the replacement of rotten wood). Putnam argues that discovery in this matter has revealed the applicants "knew or should have known of the risks to their rights" as early as September 2004 and as late as March 2011. *See* Defs.' Resp. at 6 & Exs. A-C (dates of invoices issued by Whitecap to various applicants for wood products purchased from Whitecap; correspondence between Douma, Chapin and Whitecap regarding defective wood products; copies of "Release of All Claims" executed by Bratton, Mr. McCrave, Chapin and Douma) [DEs 153-1 to 153-3]. Putnam's reliance on any dates preceding the initiation of the instant matter is nonsensical. As explained, the appropriate measure is the applicants' actual or constructive knowledge regarding the potential ramifications of the litigation on the applicants' interests. *See Alcan Aluminum, Inc.*, 25 F 3d at 1182.

cause of action at all.

"[W]here discovery has begun but is not yet closed, courts generally find intervention timely so long as some acceptable explanation is given for the delay." *Anthony*, 56 V.I. at 529. Here, however, the applicants provided no explanation. Moreover, the applicants do not dispute statements by Whitecap and Putnam that as of either March or April 2011, at least some of the applicants knew or should have known about this litigation. Upon considering the required factors, the Court concludes the applicants' motion is untimely because the litigation is not in its early stages, dispositive motions have been filed, participation by the applicants would prejudice the original parties by substantially delaying adjudication of the case, and the delay in filing the instant motion remains unexplained and is thus unjustified. *See Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 465 (M.D. Pa. 2005) (denying intervention as untimely even though discovery was still ongoing, where reasons for the movant's delay were unpersuasive); *Rosa v. V.I. Water & Power Auth.*, 32 V.I. 89, 92 (Terr. Ct. 1995) (denying intervention as untimely despite discovery still being open as no justification was given at all for delay in filing). The applicants simply have not carried their burden of showing timeliness.

For completeness, however, the Court next addresses the additional arguments in support of and in opposition to the applicants' motion. *See Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *9-10 (finding motion untimely but "mak[ing] further inquiry into the legal basis for intervention); *Kitzmiller*, 229 F.R.D. at 464 (finding motion untimely but analyzing remaining prongs under Rule 24(a) "in the exercise of completeness").

**B.     Rule 24(a)(2) – Intervention of Right**

Rule 24(a) provides a court must permit intervention where a movant, upon timely motion,

>claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). Thus, in addition to timeliness, the following elements must be met in order to establish intervention as of right: (1) "the applicant has a sufficient interest in the litigation;" (2) without intervention, "the interest may be affected or impaired, as a practical matter by the disposition of the action;" and (3) "the interest is not adequately represented by an existing party in the litigation." *General Star Indem. Co.*, 224 F.R.D. at 374-75 (quoting *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)); *accord Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (stating each factor "must be met to intervene as of right").

1.  Interest in the Litigation

Rule 24 does not detail what kind of interest a party must have in order to intervene as a matter of right, but the Supreme Court has held that "[w]hat is obviously meant . . . is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also Kleissler v. United States Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (noting no "precise and authoritative definition of the interest that satisfies Rule 24(a)(2)" exists) (citation omitted). "Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 972. Accordingly, to establish a sufficient interest for intervention, the applicants must demonstrate "a legally cognizable interest, i.e., one that belongs to or is owned by the intervenor." *Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *10 (citing *Mountain Top Condominium Ass'n*, 72 F.3d at 366; *Subramaniam v. Centeno*, 2010 U.S. Dist. LEXIS 54642, at *5 (D.V.I. June 3, 2010) (noting "a significantly protectable interest is defined as a legal interest as distinguished from interests of a general and indefinite character")

(citation omitted). Furthermore, the proposed intervenor should have an interest that is "capable of definition," and "will be directly affected in a substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972. Thus, "[a] mere economic interest in the outcome of the suit is insufficient to support a motion to intervene." *Lansdale*, 2010 U.S. Dist. LEXIS 75804, at *10.

Here, the applicants initially alluded generally to their "interest" as third-party beneficiaries, without any discussion. Applicants' Mot. ¶¶ 8-9. In reply to arguments by Whitecap and Putnam, the applicants contend they have a cognizable interest in the outcome of this litigation as third-party beneficiaries of the contract between Whitecap and Putnam Lumber as well as direct claims against defendants "for recovery under warranty, negligence and as the end users under strict liability."[7] Applicant's Reply at 6 [DE-163]. An interest as a third party beneficiary is an "interest . . . sufficient to justify intervention as of right." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 689 (D. Md. 2010); *see Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (observing "[c]ontract rights are traditionally protectable interests" and thus a third-party beneficiary to a contract satisfies the substantial interest factor); *Fifth Third Bank of W. Ohio v. United States*, 52 Fed. Cl. 202, 204 (2002) (finding sufficient interest satisfied where a party is a third-party beneficiary to contract).

While this action arises primarily from an arrangement for the sale of treated wood

---

[7] Whitecap argues the applicants' interest is economic only and supports its argument with the following: (1) the applicants' claims are duplicative of those sought by Whitecap; (2) Whitecap "is already seeking damages" on behalf of the applicants; and (3) "[t]here is nothing different or specific about the [a]pplicants' claim. Pl.'s Resp. at 7. Whitecap argues further that as a result of releases signed by Chapin, Douma, Bratton and McCrave "releas[ing], acquit[ing] and forever discharge[ing]" Whitecap and its suppliers, Chapin, Douma, Bratton and McCrave do not have a specific interest in this case. *Id*. at 8. Similarly, Putnam contends the applicants fail to "explain how the interest is specific to them, they never define the interest, they never show that the interest will be directly affected in a substantially concrete fashion by the relief sought and they never show that the interest is direct." Putnam Resp. at 8. Given the applicants' failure to properly present their case in the instant motion, however, Whitecap and Putnam were deprived of an opportunity to address the arguments set forth in the applicant's reply brief.

product between Putnam and Whitecap, the applicants simply do not make a showing that they have an interest in "the property or transaction that is the subject of the action" sufficient to establish their right to intervene. FED R. CIV. P. 24(a)(2). First, the applicants are not parties to the contract. Second, they provide no analysis in support of their alleged third-party beneficiary status beyond the conclusory allegations set forth in their reply and the third proposed complaint. *See Olympic Sports Data Servs.*, 2008 U.S. Dist. LEXIS 103546, at *5. In order to make out a case as a third party beneficiary of a contract, a party must be able to allege and prove the contracting parties intended the third party to benefit from their transaction. But, applicants' motion, reply and third proposed complaint are devoid of allegations that Whitecap and Putnam Lumber <u>intended</u> for their contract to benefit them.[8] *See Matos v. Nextran, Inc.*, 2009 U.S. Dist. LEXIS 71041, at *7 (D.V.I. Aug. 10, 2009) (explaining under Virgin Islands law, "a person must be in privity to a contract to sue for damages for breach of such contract;" however, a third party who has standing as an <u>intended</u> beneficiary under the contract may sue for beach of express and implied warranties); *Banks v. Int'l Rental & Leasing Corp.*, 2008 U.S. Dist. LEXIS 40601, at *9 (D.V.I. 2008) (stating "[t]hird party beneficiary status is a matter of contract interpretation; it extends only to those parties contemplated by the contract"), *rev'd on other grounds*, 680 F.3d 296 (3d 2012) (quoting *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 600 (E.D. La. 1998)); *accord Kmart Corp. v. Balfour Beatty, Inc.*, 994 F. Supp. 634, 636 (D.V.I. 1998). As such, their alleged third party beneficiary status does not rise to the level of stating an interest sufficient to support intervention of right. Finally, the applicants provide no explanation as to how their interest – whatever it may be – will be directly affected in a

---

[8] As noted, the third proposed complaint contains only conclusory allegations that the applicants are third-party beneficiaries. *See* [DE 167-1 ¶¶ 22, 32, 44, 47].

substantially concrete fashion by the relief sought by Whitecap. Accordingly, the applicants have failed to establish that they have a sufficient interest in the litigation.

2. <u>Potential Impairment of Interest by Disposition of Action in Applicants' Absence</u>

Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest is in jeopardy in the lawsuit. In making such a determination, the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest." *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (citations and internal quotations omitted). It is not sufficient that the claim is incidentally affected; rather, there must be "a tangible threat" to the applicant's legal interest. *Id*. This factor may be satisfied if, for example, a disposition of the present action in the applicants' absence will have a stare decisis, res judicata or collateral estoppel effect on any action which they bring separately, or if the applicants' rights may be affected by a proposed remedy. *See United States v. Smith*, 48 V.I. 544, 550 (D.V.I. 2006).

Assuming, *arguendo*, that the applicants have a sufficient interest in the litigation, in their motion, the applicants state only that the "disposition of this action without this intervention will, or may as a practical matter, impair or destroy the [a]pplicant's [sic] ability to protect their interests" without further comment. Applicants' Mot. ¶ 2. Despite Whitecap and Putnam having no substantive argument to which to respond, both set forth reasons in support of their position that any interest of the applicants will not be impaired by disposition of this matter. In particular, Whitecap and Putnam emphasize the ability of the applicants to bring a separate action in the Virgin Islands Superior Court against defendants – which the applicants have done – without

concerns about the stare decisis effect of rulings made in this matter.[9] *See* Pl.'s Resp. at 9 (citing *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 569 (D. Del. 1981)); Defs.' Resp. at 10.

Although stare decisis can furnish the practical disadvantage required for the applicant to be entitled to intervention as of right, "[c]ertain additional exceptional circumstances must be present which would give the decision in the first action compelling persuasive force in the second." *Jet Traders Inv. Corp.*, 89 F.R.D. at 569. The "exceptional circumstances" include the following: (1) the proposed intervenor, if not allowed to intervene, "might be forced to present identical issues of law and fact to the same court in a later action;" or (2) "where there is presented to the court a question of first impression on a controlling issue of law." *Jet Traders Inv. Corp.*, 89 F.R.D. at 569 (explaining "where the proposed intervenor would be likely to present its case to a different court in a parallel system, such as a state court, in a later action, or where the identical issues of law and fact are not controlling, the effect of stare decisis will not be enough to support intervention"); *see Int'l Paper Co. v. Jay*, 887 F.2d 338, 345 (1st Cir. 1989) (explaining "where a federal court is interpreting state law, the stare decisis effect of its decision will not provide a sufficient practical impairment to justify intervention under Rule 24(a)(2)"); *Nat'l Union Fire Ins. Co. v. Continental Illinois Corp.*, 113 F.R.D. 532, 536 (N.D. Ill. 1986) (noting "any arguable practical impairment of the [applicant's] interest because of the stare decisis effect of this [c]ourt's decisions is minimal at best" given any future action involved questions of state law presented to state court); *see also* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.) (stating "[s]tare decisis is not a relevant concern if the case does not involve the resolution of new legal issues");

---

[9] Applicants are not parties to this litigation, and have not shown that they will be legally bound by any adverse decision in this case. Accordingly, res judicata and collateral estoppel do not appear to apply to the instant matter.

At the time Whitecap and Putnam filed their responses, no separate federal lawsuit involving the applicants existed, and applicants were already pursuing their claims in the local courts of the Virgin Islands. However, approximately one week later, the applicants filed a lawsuit (Civil No. 2012-77) in this Court. The applicants contend their separate federal lawsuit will be hampered by the stare decisis effect of rulings made in this case since they "seek recovery . . . for the inspection, replacement, and remediation costs which are necessary given the hazardous nature of the defective wood products against the diverse [d]efendants." Applicants' Reply at 7. Applicants do not make clear, however, how a recovery sought by them in a future proceeding will be substantially impacted by rulings made in the instant matter, and applicants have not explained what such an impact might be. Moreover, the applicants were not "forced" to file their federal court action. Rather, the timing of applicants' federal lawsuit strongly suggests the applicants filed their complaint solely to defeat the parties' argument that stare decisis does not support intervention. In sum, the applicants fail to make any showing, beyond the conclusory allegation above, as to how disposition of Whitecap's claims would have a substantial impact on the applicants' interest. *See* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.) (explaining "[r]ecurring common law actions such as breach of contract and negligence are unlikely to achieve the practical stare decisis impairment necessary to satisfy Rule 24(a)").

3. <u>Adequacy of Representation of Applicants' Interest by Existing Parties</u>

The applicants have also failed to demonstrate that the representation of their interests in the existing litigation may be inadequate. *See Kleissler*, 157 F.3d at 969. This burden is satisfied by a showing that: (1) "the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention to the applicant's

interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting its suit." *Alcan Aluminum, Inc.*, 25 F.3d at 1185 n.15. The applicants' motion is silent as to this issue; however, in their reply, to which Whitecap was not afforded an opportunity to respond, the applicants argue (1) their "interests, although similar, diverge sufficiently that Paradise [Lumber] cannot devote proper attention" thereto and (2) "there is evidence of collusion." Applicants' Reply at 6, 9. In particular, the applicants contend:

(1) "The inspection, replacement and remediation costs[] the [a]pplicants seek to recover stem from the hazardous nature of the products, not their inability to perform as advertised;" thus, "Whitecap does not adequately represent the [a]pplicant's interests;" and

(2) Whitecap has improperly attempted to limit the damages of the applicants and others similarly situated, "and to also limit the defendants' exposure, to the replacement of the defective and hazardous wood products without full disclosure prior to obtaining a release that the premature rot will continue spreading to other wood products jeopardizing the structural integrity of the homes."

Applicants' Reply at 6, 9.

Where there is an identity of interest between the applicant and a party, adequate representation is assured. *See* 6 James W. Moore et al., 6-24 Moore's Federal Practice, § 24.03 (3d ed.). Here, the applicants and Whitecap have an identity of interest regarding the single issue before the Court – whether defendants are liable under contract or tort law for damages arising from the defective wood products treated by Great Southern and distributed by Putnam. A review of the record does not reveal a misalignment of interests. Indeed, the applicants have put forth the same allegations and claims in their proposed third complaint as Whitecap.

Moreover, the Court finds the applicants' conclusory allegations of collusion unpersuasive. The proposed applicants did not raise this issue in their motion and apparently raise it in their reply as an afterthought. In addition, there is no suggestion that Whitecap is not

diligently prosecuting its claims. In fact, the record indicates otherwise.

### C.  Rule 24(b) – Permissive Intervention

The applicants also move in the alternative for permissive intervention pursuant to Rule 24(b), which provides that the Court may permit anyone to permissively intervene, upon timely motion, who has "a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact."[10]  FED. R. CIV. P. 24(b)(1)(A)-(B). Determining whether a motion for permissive intervention should be granted is within the discretion of the court. *See Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 232 (3d Cir. 2010); *Hoots*, 672 F.2d at 1135. In evaluating the applicability of permissive intervention, courts should consider whether the proposed intervenors "will add anything to the litigation," *Kitzmiller*, 388 F. Supp. 2d at 486, and whether the proposed intervenors' interests are already adequately represented in the litigation. *See Hoots*, 672 F.2d at 1136 (noting "where . . . the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'"). Furthermore, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

As discussed above, the applicants' motion is untimely. Also, the interests of Whitecap and the applicants in the instant matter are well aligned. *See* Applicants' 3d Proposed Compl. (alleging similar facts and identical causes of action as that of Whitecap) [DE 167-1]. Furthermore, Whitecap's representation of those mutual interests has been diligently pursued.

---

[10]  The applicants do not argue that a statute permits a conditional right to intervention and the Court is not aware of one.

Accordingly, as the applicants' participation in the present litigation would add nothing appreciable to the proceedings, and the additional discovery that would have to be conducted would necessarily result in undue delay in the adjudication of the rights of the original parties. In sum, permitting the applicants to intervene in this matter would be unhelpful to its disposition because it would be superfluous. *See Hoots*, 672 F.2d at 1136.

### III.   CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that the applicants' motion to intervene [DE 143] is DENIED.

**Dated**: November 29, 2012                             S\_____
                                                                                  **RUTH MILLER**
                                                                                  United States Magistrate Judge