DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

WHITECAP INVESTMENT CORP. d/b/a/ )
PARADISE LUMBER, )
                      )
             Plaintiff, )
                      )
             v. )       Civil No. 2010-139
                      )
PUTNAM LUMBER & EXPORT COMPANY; PUTNAM )
FAMILY PROPERTIES, INC.; GREAT )
SOUTHERN WOOD PRESERVING, INC.; MIKE )
NOBLE; XYZ CORP.; JOHN DOE; and JANE )
DOE, )
                      )
             Defendants, )
                      )
             and )
                      )
GARY CHAPIN )
                      )
             Intervenor-defendant. )
_____ )
                      )
PUTNAM FAMILY PROPERTIES, INC., )
                      )
             Cross-claimant, )
                      )
             v. )
                      )
GREAT SOUTHERN WOOD PRESERVING, INC., )
                      )
             Cross-claim defendant. )
_____ )
                      )
PUTNAM LUMBER & EXPORT COMPANY, )
                      )
             Cross-claimant, )
                      )
             v. )
                      )
GREAT SOUTHERN WOOD PRESERVING, INC., )
                      )
             Cross-claim defendant. )
_____ )

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 2

MIKE NOBLE,                              )
                                        )
                Cross-claimant,         )
                                        )
                v.                      )
                                        )
GREAT SOUTHERN WOOD PRESERVING, INC.,   )
                                        )
                Cross-claim defendant.  )
_____)
                                        )
PUTNAM FAMILY PROPERTIES, INC.,         )
                                        )
                Counterclaimant,        )
                                        )
                v.                      )
                                        )
WHITECAP INVESTMENT CORP. d/b/a         )
PARADISE LUMBER,                        )
                                        )
                Counterclaim defendant.)
_____)

ATTORNEYS:

**Alex Moskowitz**
Dudley, Topper & Feuerzeig
**Christopher A. Kroblin, Esq.**
**Shari N. D'Andrade, Esq.**
**Erika A. Kellerhals, Esq.**
Kellerhaals Ferguson Fletcher Kroblin LLP
St. Thomas, VI
        *For the plaintiff/counterclaim defendant Whitecap*
        *Investment Corp. d/b/a Paradise Lumber,*


**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
        *For the defendants/cross-claimaints Putnam Lumber & Export*
        *Co. and Mike Noble; and for the defendant/cross-*
        *claimant/counterclaimant Putnam Family Properties, Inc,*

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 3

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
        *For the defendant/cross-claim defendant Great Southern Wood*
        *Preserving, Inc.,*

**Terri L. Griffiths, Esq.**
Terri Griffiths, Attorney at Law
Carbonadale, IL
        *For the intervenor-defendant Gary Chapin.*


<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

        Before the Court is the motion of the defendant/cross-claim
defendant Great Southern Wood Preserving ("GSWP") to dismiss all
claims asserted against it for want of personal jurisdiction.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

        GSWP is an Alabama corporation, and does its business
principally in Alabama. That business is the lumber business. In
addition to selling wood directly, it also provides chemical and
pressure treatments to prevent lumber from decaying. The
ostensible purpose of such treatments is to render the lumber
safe for use in buildings.

        From in or about 2003 until in or about 2009, GSWP
regularly sold treated lumber and provided lumber-treatment
services to the defendant/counterclaimant/cross-claimant Putnam
Family Properties, Inc., doing business as Putnam Lumber and

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 4

Export Company ("Putnam Lumber"). Putnam Lumber, a Florida corporation, is itself a lumber retailer. Putnam Lumber regularly sold lumber to, among others, Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had purchased from Putnam Lumber, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings.

Paradise Lumber claims that the GSWP-treated lumber prematurely decayed, causing damage to the buildings into which it had been incorporated. On December 29, 2010, Paradise Lumber initiated this action.

On June 8, 2011, GSWP submitted an answer to the Complaint. In its Answer, it asserted as an affirmative defense that this Court lacked personal jurisdiction over it.

On March 29, 2012, GSWP moved to dismiss the Complaint for failure to state a claim. That motion has been referred to the Magistrate Judge who has issued a Report and Recommendation that has yet to be adopted by this Court.

On August 2, 2012, GSWP filed the instant motion, seeking dismissal on the ground that this Court cannot exercise personal

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 5

jurisdiction over it. Paradise Lumber and Putnam Lumber oppose the motion.

## II. <u>DISCUSSION</u>

### A.   <u>Factual Challenge</u>

Once challenged, " '[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A challenge to a court's exercise of personal jurisdiction may be either facial or factual. In a facial challenge, a court must take all allegations in the complaint as true and the plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Land Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

However, if the challenge arises after the allegations in the complaint have been controverted, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 62 (3d Cir. 1984)). The plaintiff may discharge this burden by producing "affidavits or other competent evidence that [show

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 6

that] jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

**B.    Statutory and Due Process Considerations**

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor*, 496 F.3d at 316; *see also* Fed. R. Civ. P. 4(k)(1)(A).

If the exercise of personal jurisdiction comports with local law, a court must next ask whether, under the Due Process Clause of the United States Constitution, the defendant has "certain minimum contacts with . . . [the forum state or territory] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal jurisdiction: general and specific. *See O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v.*

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 7

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

"Specific jurisdiction exists if the defendant has

' "purposefully directed" his activities at residents of the

forum and the litigation results from alleged injuries that

"arise out of or relate to" those activities.' " *Metcalfe*, 566

F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)).

" 'If the defendant "maintain[s] continuous and substantial

forum affiliations," then general jurisdiction exists. If the

defendant's contacts fall short of that standard, then at least

one contact must give rise or relate to the plaintiff's

claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d

at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink*

*Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration

original)).

## III. ANALYSIS

### A. Waiver

Before addressing the merits of GSWP's motion, the Court

must first determine whether GSWP waived any personal

jurisdiction defense. Specifically, Paradise Lumber and Putnam

Lumber argue that by first filing a motion to dismiss for

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 8

failure to state a claim, pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)"), GSWP waived its right to

assert its personal-jurisdiction defense.

There are two ways by which a personal-jurisdiction defense

may be waived by a parties litigation conduct. First, a party

may waive the defense by failing to assert it in a pre-answer

motion to dismiss, or in an answer or similar responsive

pleading. Fed. R. Civ. P. 12(h)(1), (g)(2); *Konigsberg v. Shute*,

435 F.2d 551, 551 (3d Cir. 1970) (holding that "If the defense

of lack of jurisdiction of the person is not raised before

answer or in the answer itself it is by the express terms of

[Rule 12(h)] to be treated as waived, not because of the

defendant's voluntary appearance but because of his failure to

assert the defense within the time prescribed by the rules.")

Second, even if the defense is properly preserved in the

party's pleadings, the party may waive the defense by consenting

to jurisdiction. "[A] party is deemed to have consented to

personal jurisdiction if the party actually litigated the

underlying merits or demonstrates a willingness to engage in

extensive litigation in the forum." *In re Texas E. Transmission*

*Corp. PCB Contamination Ins. Coverage*, 15 F.3d 1230, 1236 (3d

Cir. 1994). Indeed, "[a] defendant can waive the requirement of

personal jurisdiction via his involuntary actions." *Ciolli v.*

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 9

*Iravani*, 625 F. Supp. 2d 276, 290 (E.D. Pa. 2009) (citing *Bel-Ray*, 181 F.3d at 443; *Ins. Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982)). "However, . . . the mere filing of a motion does not necessarily constitute a waiver of the personal jurisdiction defense." *Ciolli*, 625 F. Supp. at 290 (citing *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 91 (D. Del. 2006)) (holding that moving for a stay did not constitute a waiver of defendant's personal-jurisdiction defense).

Thus, for example, in *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999), the defendants raised an objection to personal jurisdiction in their answer. They then proceeded to seek summary judgment on several counterclaims. Only after their motion for summary judgment was denied did they seek a determination of the jurisdictional issue. The Court of Appeals for the Third Circuit held that by asking "the District Court for affirmative relief before securing a determination on their personal jurisdiction defenses," they had waived those defenses. *Id.* at 443. The Third Circuit explained that "there 'exists a strong policy to conserve judicial time and resources,' " and accordingly " 'preliminary matters such as personal jurisdiction should be raised and disposed of before the court considers the merits or quasi-merits of a controversy.' " *Id.* (quoting *Wyrough*

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 10

*& Loser, Inc. v. Pelomar Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967)).

The court relied on its previous decision in *Wyrough & Loser, Inc. v. Pelomar Laboratories, Inc.*, 376 F.2d 543 (3d Cir. 1967). In that case, the court held that a defendant who participated in the adjudication of the plaintiff's application for a preliminary injunction without securing a determination of his challenged to the court's personal jurisdiction waives that defense, unless it is not reasonably feasible to first secure that determination. *Id.* at 547.

Turning to the facts at bar in *Bel-Ray*, the Third Circuit noted that the defendants "did far more than resist an application for a preliminary injunction." 181 F.3d at 443. Indeed, the court noted that the defendants moved for summary judgment and litigated that motion to completion. It was only a month after their motion for summary judgment was denied that they then sought a determination on their personal-jurisdiction defense. The Court thus concluded that the defendants conducted resulted in a waiver of that defense.

Similarly, in *Yedell v. Tutt*, 913 F.2d 533 (8th Cir. 1990), the defendants, though noting their objection to personal jurisdiction in their answer, proceeded through discovery, motions, a trial, and post-trial motions. It was only upon

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 11

appeal that the defendants sought dismissal for lack of personal jurisdiction. The Court of Appeals for the Eighth Circuit concluded that the defendants had waived their jurisdictional defense, explaining "that their conduct in delaying consideration of this threshold issue manifests an intent to submit to the court's jurisdiction." *Id.* at 539.

By contrast, in *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376 (5th Cir. 2004), the defendant raised the defense of personal jurisdiction in its answer, but did not seek a determination of that issue until some seven months later. The Court of Appeals for the Fifth Circuit noted that, in the intervening seven months, the defendant "did not file any counterclaims, much less seek adjudication on the merits of any claims." *Id.* at 380. Moreover, the defendant "continued to note its objection to jurisdiction at the preliminary conference and in its discovery responses . . . ." *Id.* Significantly, the defendant did wait to file its motion to dismiss until after its motion to preclude the plaintiff from presenting expert and other testimony was denied. However, the Court found the possible "strategic timing" of the defendant's motion was not enough to waive its personal jurisdictional challenge. *Id.* at 381.

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 12

In the present case, GSWP did not file a preanswer motion
to dismiss. However, it did assert an objection to personal
jurisdiction in its answer. This would ordinarily suffice to
preserve its defense under the Federal Rules of Civil Procedure.
*See* Fed. R. Civ. P. 12(h)(1), (g)(2)

However, GSWP filed its answer in this matter on June 8,
2011. It did not file the instant motion until more than a year
later, on August 2, 2012. During the interim, GSWP participated
in extensive discovery, propounding several discovery requests
and making various disclosures of its own. Moreover, on March
29, 2012, nearly five months before it sought a personal-
jurisdiction determination, GSWP moved to dismiss the complaint
for failure to state a claim.

The Third Circuit has recognized that a Rule 12(b)(6)
motion may "necessitate[] a ruling on the merits of [a] claim."
*Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891
(3d Cir. 1977). Although GSWP did not wait until after its Rule
12(b)(6) motion was adjudicated to filed the instant motion, it
certainly invited the Court to opine on the merits, and the
Court may very well have done so, before seeking a personal-
jurisdiction determination. The Court notes that just a few days
before GSWP filed its Rule 12(b)(6) motion, it had partially

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 13

granted a similar motion filed by Putnam Lumber, after

conducting a hearing on the matter, at which GSWP was present.

Although GSWP noted its objection to personal-jurisdiction

in its Rule 12(b)(6) motion, it did not then seek a

determination of that issue. GSWP offers no explanation for why

felt it necessary to wait an additional five months to assert

another Rule 12(b) defense. Although the waiver provisions in

Rule 12 apply only in the pre-answer context, a five-month delay

between the assertion of various Rule 12 defenses would seem

contrary to Rule 12's general policy that such defenses be

raised early and simultaneously.

Moreover, courts have held that a significant delay in

seeking a personal-jurisdiction determination, when coupled with

the filing of motions and participation in discovery, may

constitute waiver. *See, e.g., Continental Bank, N. Am. v. Meyer*,

10 F.3d 1293, 1297 (7th Cir. 1993) (finding waiver where, "for

over two-and-a-half years," defendants participated in

litigation by filing and opposing motions and "participat[ing]

in lengthy discovery" before seeking a determination on personal

jurisdiction); *Rauch v. Day & Night Mfg. Corp.*, 576 F. 2d 697,

702 (6th Cir. 1978) (finding waiver where, defendants waited

one-and-a-half years to seek personal jurisdiction

determination, and in the meantime "entered into extensive

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 14

discovery," moved to dismiss on statute-of-limitations grounds, and stipulated to a stay of proceedings).

The Court is not aware of, and GSWP does not suggest, any authority for the proposition that a Rule 12(b)(6) dismissal is not "on the merits" for purposes of determining whether a defendant has waived a personal-jurisdiction defense. Federal Rule of Civil Procedure does permit--indeed, it encourages--the simultaneous assertion of Rule 12 defenses. *See* Fed. R. Civ. P. 12(g)(2). However, this is not a situation where GSWP sought a simultaneous determination of personal jurisdiction and the sufficiency of the pleadings. Instead, it chose to wait more than a year to seek such a determination, all the while actively participating in the ongoing litigation.

Accordingly, the Court finds that GSWP, by its litigation conduct, has waived its objection to personal jurisdiction. However, as set forth below, even if GSWP had not waived its objection, the Court finds that there is a sufficient basis for the exercise of personal jurisdiction.

**B.   <u>Virgin Islands Long-Arm Statute</u>**

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." (citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 f.2d 61, 63 (3d Cir. 1984)); *see*

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 15

*also* Fed. R. Civ. P. 4(k)(1)(A). In the Virgin Islands,

establishing personal jurisdiction requires a "two-part

analysis." *Metcalfe*, 566 F.3d at 330. "First, there must be a

statutory basis for exercising jurisdiction over the nonresident

defendant in accordance with the Virgin Islands Long-Arm

Statute, V.I. CODE ANN. tit. 5, § 4903." *Id.* "[S]econd, the

nonresident defendant must have minimum contacts with the Virgin

Islands sufficient to satisfy constitutional due process." *Id.*

(citing *Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 279

(Super. Ct. 2005) ("[T]he Court's *in personam* jurisdiction is

limited first by the terms of the [long-arm] statute and then by

the Due Process Clause of the Fourteenth Amendment of the

Constitution."); *Godfrey v. Int'l Moving Consultants, Inc.*, 18

V.I. 60, 66 (D.V.I. 1980) ("The proper method of testing

jurisdiction over a nonresident defendant is to first determine

whether the long-arm statute authorizes the Court to exercise

its adjudicatory powers, and then, secondly, to decide if such

an exercise is constitutionally permissible.")

     The Virgin Islands Long-Arm Statute provides, in pertinent

part, that

               A court may exercise personal jurisdiction
               over a person, who acts directly or by an
               agent, as to a claim for relief arising from
               the person's

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 16

> (1) transacting any business in this
>     territory;

V.I. CODE ANN. tit. 5, § 4903(a) ("Section 4903(a)").

To evaluate whether there is personal jurisdiction under the Virgin Islands Long-Arm Statute, the Court must "determine (1) whether the defendant's contacts meet one of the categories under section 4903(a) and then (2) whether the plaintiff's claim 'arises from' that contact." *Molloy v. Indep. Blue Cross*, 56 V.I. 155 (S. Ct. 2012). Here, there is no dispute that GSWP's putative contacts with the Virgin Islands are also what give rise to the present action--namely, the treating of lumber destined for the Virgin Islands and the selling of treated lumber. There is also no dispute that, to the extent GSWP has contacts with the Virgin Islands, it would fall within the "transacting any business" category of Section 4903(a).[1] Thus, the Court's analysis will first focus on determining whether GSWP's conduct is sufficient to constitute "transacting business."

"Under subsection (a)(1), the term 'transacting any business' can be satisfied by only a single act which in fact

---

[1] In the alternative, Paradise Lumber and Putnam Lumber argue that this Court may exercise personal jurisdiction over GSWP under Section 4903(a)(3), which covers individuals who "caus[e] tortious injury" in the Territory. For the reasons discussed herein, the Court finds it unnecessary to reach this issue.

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 17

amounts to the transaction of business within the state or territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp.2d 561, 567 (D.V.I. 2003) (finding it sufficient under subsection (a)(1) that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act." *Manbodh Asbestos Litig.*, 47 V.I. at 283; *see also Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in some business activity in the Virgin Islands coupled with the receipt of substantial revenue from the activity sufficient to establish the application of subsection (a)(1) of the long-arm statute).

In *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009), Richard and Cynthia Metcalfe (collectively, the "Metcalfes") residents of the Virgin Islands, purchased a boat from Renaissance Marine, Inc. ("Renaissance"), a company based in Florida. The Metcalfes claimed that Renaissance breached the contract of sale, and brought suit in this Court. Renaissance sought to dismiss the action, claiming lack of personal jurisdiction. In response, the Metcalfes asserted that they "exchanged phone calls, faxes, and emails with Renaissance while

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 18

they were in the Virgin Islands during the process of
negotiating the sale of the [boat]." *Id.* at 332. The Third
Circuit held that, "[b]ecause one single act can constitute
'transacting business,' surely repeated reciprocal
communications between a buyer in the Virgin Islands and a
seller located elsewhere which culminate in an agreement for
sale of an item at a cost of nearly $85,000 also satisfies the
standard under subsection (a)(1)." *Id.*

Similarly, in *Molloy v. Blue Cross Blue Shield*, 56 V.I. 155
(S. Ct. 2012), Gary and Christa Molloy (collectively, the
"Molloys"), residents of the Virgin Islands, brought suit
against Blue Cross Blue Shield Association ("BCBSA") in the
Superior Court of the Virgin Islands. The gravamen of their
complaint was that BCBSA was liable for failing to provide
timely air evacuation services when their infant son suffered
complications caused by his premature birth. Significantly, the
Molloys had no relationship with BCBSA. Rather, they had entered
into a health-insurance agreement with Blue Cross Blue Shield of
the Virgin Islands ("BCBSVI"), an independent company that had
licensed the "Blue Cross Blue Shield" brand name from BCBSA.
Despite this, the Supreme Court of the Virgin Islands held that
BCBSA had transacted business in the Virgin Islands within the
meaning of Section 4903(a)(1). The court noted that BCBSA had

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 19

lobbied Congress in order to secure contracts for BCBSVI to

provide insurance to federal employees in the Virgin Islands.

The court further noted that BCBSA received substantial income

from BCBSVI's licensing fees, a portion of which were derived

from revenue produced by the contracts with federal employees.

The Court found that "Acting as an agent for an insurance

company in the Virgin Islands . . . with the specific purpose of

garnering contracts to cover Virgin Islands citizens qualifies

as more than an inconsequential act, and indicates BCBSA's

intent to transact business within the Virgin Islands." *Id.* at

176.[2]

Here, GSWP argues that it does not and has not transacted

any business in the Virgin Islands. In support of this

contention, it offers the affidavit of Bill Freeman ("Freeman").

Freeman is a general manager at a GSWP lumber-processing

facility. He avers that GSWP "has not ever marketed,

---

[2] The Virgin Islands Supreme Court ultimately concluded that, although BCBSA's contacts with the Territory indicated an intent to transact business therein, the plaintiff's claims did not "arise from" those contacts. This was so because BCBSA's contacts were not a "but-for" cause of the Molloys claims. Indeed, the Molloys could very well have sustained the same injuries if BCBSA had engaged in no lobbying on behalf of BCBSVI or received no revenue from its licensing arrangement.

As noted above, in this case, there is no dispute that, should GSWP's contacts amount to "transacting business" in the Virgin Islands, they would also be a but-for cause of Paradise Lumber's claims. The gravamen of Paradise Lumber's complaint is that GSWP failed to properly treat certain lumber which was ultimately sold to Paradise Lumber. If none of GSWP's lumber wound up in the Virgin Islands, there would be no basis for Paradise Lumber's claims against GSWP.

distributed, or sold treated wood products in the United States

Virgin Islands." (GSWP's Ex. A ¶ 4.) He further avers that the

lumber at issue in this case was simply "treated per

specifications provided by Putnam Lumber, and [GSWP] had no

involvement with sales by Putnam Lumber of the wood to any end

users or retailers." (GSWP's Ex. A ¶ 4.) More generally, he

avers that

> [GSWP] has never (1) been licensed to do
> business in the U.S. Virgin Islands; (2)
> maintained any offices in the U.S. Virgin
> Islands; (3) employed any persons who reside
> in the Virgin Islands; (4) advertised in the
> Virgin Islands; (5) maintained a telephone
> number in the U.S. Virgin Islands; (6) owned
> any assets in the U.S. Virgin Islands; (7)
> held any bank accounts in the U.S. Virgin
> Islands; (8) transacted any business in the
> U.S. Virgin Islands; (9) derived substantial
> revenues from goods manufactured for or sold
> by [GSWP] to Putnam and used or consumed in
> the U.S. Virgin Islands or services rendered
> by [GSWP} in the U.S. Virgin Islands.

(GWSP's Ex. A ¶ 5.)

In response, Paradise Lumber offers the deposition of

Freeman, in which he admits that GSWP received over $2,000,000

in revenue from lumber sales to Putnam Lumber. (Paradise

Lumber's Ex. F., Tr. of Dep. of Freeman 695:21-23.) Out of these

total sales, GSWP received $432,884.72 for lumber or the

treatment of lumber which was sold in the Virgin Islands.

(Putnam Lumber's Ex. E. 4, Resp. to Interrogatories.) This

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 21

amount of revenue certainly qualifies as "substantial." *See*
*Metcalfe* 566 F.3d at 332 (finding the receipt of $85,000 in
revenue to be "substantial").

What is less clear is whether GSWP engaged in any business
activity in the Virgin Islands to receive this substantial
revenue. Michael Simerly ("Simerly"), GSWP's corporate
representative, admits that in or about 2008, he became aware
that Virgin-Islands customers of Putnam Lumber were complaining
about the quality of GSWP's lumber. (Paradise Lumber's Ex. I,
Tr. of Dep. of Simerly 36:25–37:17.) On July 22, 2008, Simerly
sent an email to Michael Noble ("Noble"), an employee of Putnam
Lumber, in which he stated: "[A]ny material that goes over seas
[*sic*] does not carry a warranty, BUT we can help you out some
with this issue. How many pieces is your customer talking
about?" (Paradise Lumber's Ex. G.) Noble replied:

> I'm not sure that the U.S. Virgin Islands is
> considered overseas. are [*sic*] you saying
> that the .15 treatment we bought on 5/4"
> decking which is approved in the United
> States is not covered in the United States
> Virgin Islands? would [*sic*] there be any
> reason it would disintegrate there and not
> here? Per our conversation, every piece of
> 5/4x6/16' RED treated was purchased from
> Great Southern and sold to our only client
> in St. John, U.S.V.I.

(Paradise Lumber's Ex. G.) On October 20, 2009, Simerly again
emailed Noble, asking, "Do you have any TSO items in the works

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 22

coming to Jesup or any stock items we can quote into Jax? Have you been loading any flat racks out of Jax, or are the islands still slow?" (Paradise Lumber's Ex. H.) Simerly has subsequently stated that his reference to "islands" in this email "was just a generic islands as far as the Caribbean." (GSWP's Ex. C., Tr. of Dep. of Simerly, 37:16-17.)

This evidence suggests that GSWP was aware Putnam Lumber did business in the Virgin Islands. Moreover, it appears that on at least one occasion GSWP sought to do business with Putnam Lumber specifically because Putnam Lumber sold lumber in the Virgin Islands.

This case is thus at least one degree removed from *Metcalfe*. There, as here, the defendant, Renaissance, never set foot on Virgin Islands soil. However, Renaissance did engage in several direct communications with the plaintiffs, who at that time were located in the Virgin Islands. Here, by contrast, GSWP never dealt directly with a purchaser of its goods located in the Virgin Islands. It never sent any communications to the Virgin Islands nor received any. Instead, it dealt entirely with an intermediary--Putnam Lumber--which was not itself located in the Virgin Islands. Moreover, unlike *Metcalfe*, there is no evidence GSWP was aware of the destination of the lumber prior

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 23

to 2008, when it conducted the majority of its transactions with

Putnam.

However, the mere fact that GSWP never did business

directly with the plaintiffs is not dispositive. As the Supreme

Court of the Virgin Islands has made clear, the determinative

inquiry is whether the defendant's conduct evinced "an intent to

transact business within the Virgin Islands." *Molloy*, 56 V.I. at

176. In that case, the defendant, BCBSA, did not directly engage

in any business with any person in the Virgin Islands. Yet by

acting as an agent for a Virgin Islands entity, and receiving

substantial revenues from that entity, it was held to have

transacted business.

Here, there is evidence that, at least by 2008, GSWP was

aware that some portion of the lumber it provided to Putnam

Lumber was being shipped to the Virgin Islands. At the same

time, GSWP continued to provide lumber and lumber treatment

services to Putnam Lumber up until 2009. Specifically, GSWP

received $79,575.41 in revenue from lumber that was sold by

Putnam in the Virgin Islands in 2008 and 2009. Indeed, the

evidence suggests that, on prior occasions, Putnam Lumber

specifically requested certain types of lumber from GSWP for

resale to the Virgin Islands. (*See* Paradise Lumber's Ex. G.

(referencing a prior conversation between Simerly and Noble to

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 24

the effect that "every piece of 5/4x6/16' RED treated was

purchased from Great Southern and sold to our only client in St.

John, U.S.V.I."")). It also appears that on at least one

occasion, GSWP reached out to Putnam Lumber for the purpose of

selling wood to the Virgin Islands, although the evidence as to

this point is disputed. (*Compare* Paradise Lumber's Ex. G *with*

GSWP's Ex. C.)

 The preponderance of the admittedly limited evidence tends

to show that GSWP provided lumber or the treatment of lumber to

Putnam, with the knowledge that a portion of this lumber would

be resold to the Virgin Islands. The evidence further shows that

GSWP was aware of the destination of this lumber prior to at

least some of the sales it made in 2008 and 2009. Although GSWP

did not deal directly with a Virgin Islands citizen or entity,

its position is nonetheless similar to that of BCBSA in the

*Molloy* case. GSWP, like BCBSA, engaged in conduct that it knew

would bring about substantial revenue from the Virgin Islands.

Indeed, the evidence suggests that GSWP was specifically

informed by Putnam Lumber that certain shipments of lumber would

ultimately be resold to the Virgin Islands.

 Moreover, as in *Metcalfe*, there is some evidence--albeit

disputed--that GSWP warranted that its lumber would be free of

defects. (*See* Paradise Lumber's Ex. G.) This further supports

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 25

the inference that, particularly after it became aware of the ultimate destination of the lumber, that GSWP intended to have a relationship with residents of the Virgin Islands.

The Court thus finds that Paradise Lumber has shown, by a preponderance of the evidence, that GSWP transacted business in the Virgin Islands within the meaning of Section 4903(a).

**C.   <u>Due Process</u>**

Even if the Virgin Islands Long-Arm Statute did apply, The Court must inquire as to whether Due Process would preclude this Court from exercising personal jurisdiction over GSWP.

In order for the assertion of personal jurisdiction to comport with Due Process, as a threshold matter, the defendant must have taken "action . . . purposefully directed toward the forum State." *Pinker*, 292 F.3d at 370 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334. "If the defendant maintain[s] continuous and substantial forum affiliations," then general jurisdiction exists." *O'Connor*, 496 F.3d at 321 (internal citation and quotation marks omitted.)

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 26

In *Metcalfe*, the defendant, Renaissance, "sold at least four powerboats to a Virgin Islands rental company and advertised on its website that its boats could be rented from this local company . . . ." 566 F.3d at 335. Renaissance also sold at least seven powerboats to other Virgin Islands residents. Renaissance sold all its boats with a ten-year warranty, thus "obligat[ing] itself to its customers in the Virgin Islands for many years to come." The Third Circuit found that "Renaissance's sales and advertising demonstrate a pattern of contacts with the Virgin Islands and, when coupled with the ten-year warranty . . . tend to suggest ongoing business relationships between Renaissance and Virgin Islands residents." *Id.* Viewing these contacts cumulatively, the Third Circuit found that there was a sufficient basis for the exercise of general jurisdiction over Renaissance.

Here, for the better part of a decade, GSWP sold hundreds of thousands of dollars of lumber to Putnam Lumber. As discussed above, the evidence shows that GSWP continued to do this for at least a year after learning that Putnam Lumber was selling this lumber in the Virgin Islands. Moreover, on one occasion, GSWP sold lumber directly to MSI, a Virgin Islands corporation. (Paradise Lumber's Ex. C., Tr. of Dep. of Rourke 111:5–112:23.) Further, as in *Renaissance*, GSWP warranted that its lumber would

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 27

be free from rot or other decay for some period of time,

although whether or not this warranty was applicable in the

Virgin Islands is disputed. (*See* Paradise Lumber's Ex. G.)

Yet, as noted above, this case differs from *Renaissance* in

one important respect: GSWP did not contract directly with

anyone in the Virgin Islands. Instead, it contracted with Putnam

Lumber, which in turn had an ongoing relationship with Paradise

Lumber, in the Virgin Islands. The operative inquiry is thus

whether the exercise of personal jurisdiction is constitutional

where a defendant has only made contacts with the forum state

through a third party.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286

(1980), the Supreme Court addressed when a defendant could be

subjected to personal jurisdiction for merely placing a good in

the stream of commerce. In that case, the defendants sold an

automobile to the plaintiffs in New York. A year later, the

plaintiffs were involved in an accident in Oklahoma. They sought

to assert product-liability claims against the defendants in

Oklahoma state court. The Supreme Court found no purposeful

contact by the defendants with Oklahoma, and thus no basis for

exercising personal jurisdiction over them. However, the Supreme

Court was careful to note that "if the sale of a product or

manufacturer or distributor . . . is not simply an isolated

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 28

occurrence, but arises from the efforts of the [defendants] to

serve, directly or indirectly, the market for its

product . . . , it is not unreasonable to subject them to suit."

*Id.* at 297.

Precisely what is required to give rise to personal

jurisdiction under the so-called "stream-of-commerce" theory is

not entirely clear. In *Asahi Metal Industry Company, Ltd. v.*

*Superior Court of California*, 480 U.S. 102 (1987), the Supreme

Court offered two different formulations. Justice O'Connor,

writing for a plurality of four, concluded that placement of a

product in the stream of commerce must be accompanied by some

"[a]dditional conduct of the defendant [that] may indicate an

intent or purpose to serve the market in the forum State." *Id.*

at 112. Justice O'Connor provided the following examples of such

conduct: "designing the product for the market in the forum

State, advertising in the forum State, establishing channels for

providing regular advice to customers in the forum state, or

marketing the product through a distributor who has agreed to

serve as the sales agent in the forum State." *Id.*

Justice Brennan, writing for another plurality of four,

disagreed that a finding of such "additional conduct" was

necessary. Instead, he maintained that "[a]s long as a

participant in this process is aware that the final product is

being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117 (Brennan, J., concurring).

The Court of Appeals for the Third Circuit has not selected either of the two tests articulated in *Asahi Metal* as the preferred means of determining whether a defendant has made the minimum contacts necessary to support the exercise of personal jurisdiction. Instead, it encourages courts to consider both tests and then render a decision "based on the facts in the record." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205 (3d Cir. 1998).

In *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998), the plaintiff, Pennzoil Products Co. ("Pennzoil") sued the defendants in the Western District of Pennsylvania. The defendants were Ohio corporations with their principal place of business in Ohio. The defendants produced solvents used to clean oil wells. The defendants sold these solvents to oil producers in Ohio. Approximately sixty percent of the oil produced by the Ohio oil producers was in turn sold and shipped to Pennsylvania refineries. One of these refineries was owned by Pennzoil. Pennzoil claimed that the solvents sold by the defendants to the Ohio oil producers had caused damage to its Pennsylvania refinery.

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 30

To determine whether there was a basis for the exercise of personal jurisdiction, the Third Circuit applied each of the two tests from *Asahi Metal*. First, the court applied Justice O'Connor's standard. It noted that in addition to putting their chemicals in the stream of commerce, the defendants had sent several samples to Pennzoil's laboratories in an effort to resolve the issues the solvents were causing. The Court held that this showed an intent to "design" a product for the Pennsylvania refinery market. *Id.* at 206. The Court also noted that a representative of the defendants had several telephone conversations with lab personnel at Pennzoil's refinery to discuss various ways to test the effects of the solvent. This, the court held, constituted the creation of "channels for providing regular advice to" Pennzoil's personnel in Pennsylvania. *Id.* Lastly, the Court noted that the defendants were motivated to engage in this additional conduct because they were aware that Pennzoil operated one of the largest refineries in Pennsylvania, which constituted sixty percent of the Ohio oil producers' customer base. The Court thus found a sufficient basis for the exercise of personal jurisdiction under Justice O'Connor's test.

The Court next considered the test propounded by Justice Brennan. The Court found abundant evidence that the defendants

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 31

"placed goods[,] i.e., solvents[,] in the stream of commerce and benefited economically from the sale of the final product, i.e., crude oil, to refineries in the forum state." *Id.* at 207. The Court thus concluded that, under Justice Brennan's test, there were sufficient minimum contacts to warrant the exercise of personal jurisdiction.

Here, the evidence is clear that GSWP placed goods in the stream of commerce--namely, lumber--and benefited economically from the sale of the lumber that ultimately was sent to the Virgin Islands. Moreover, it continued to do so after becoming aware, by 2008 at the latest, of the fact that this lumber was being sold in the Virgin Islands. There is also some evidence that this lumber was protected by a warranty, which would obligate GSWP to Virgin Islands residents for some time after the sales. (*See* Paradise Lumber's Ex. G.) Thus, under Justice Brennan's test, GSWP has made sufficient minimum contacts with the Virgin Islands to be subject to personal jurisdiction in this Court.

What is less clear is whether GSWP has engaged in the type of "additional conduct" contemplated by Justice O'Connor's test. There is no evidence that GSWP "designed" any product specifically with the Virgin Islands market in mind, or that it advertised its products or services in the Virgin Islands. The

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 32

evidence does show that, on at least one occasion, GSWP offered

to provide advice to individuals in the Virgin Islands who were

complaining about the quality of the lumber. (*See* Paradise

Lumber's Ex. G.) This evidence tends to suggest that there was a

channel through which GSWP offered to provide advice about its

products to end-users in the Virgin Islands. It is not clear

whether this channel was used more than once. However, the Court

notes that GSWP was clearly offering some degree of ongoing

assistance when its representative stated "we can help you out

some with this issue. How many pieces is your customer talking

about?" (Paradise Lumber's Ex. G.)

Given that the evidence clearly establishes minimum

contacts under Justice Brennan's test, and there is evidence of

at least one instance of additional conduct directed at the

Virgin Islands, the Court finds that GSWP had the minimum

contacts with the Virgin Islands necessary for this Court to

exercise personal jurisdiction over it.

"After making a determination with regard to minimum

contacts, a court has the option of evaluating whether

exercising jurisdiction comports with notions of fair play and

substantial justice." *Pennzoil Prods.*, 149 F.3d at 205 (internal

quotation marks omitted). The factors courts are to consider in

this inquiry include: "the burden on the defendant, the forum

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 33

State's interest in adjudicating the dispute, the plaintiff's

interest in obtaining convenient and effective relief, the

interstate judicial system's interest in obtaining the most

efficient resolution of controversies, and the shared interest

of the several States in furthering fundamental substantive

social policies." *Id.* at 205-06. In *Pennzoil Products*, the Third

Circuit noted in particular that there were "[n]o claims of

exorbitant travel expenses, unavailability of evidence, drains

on judicial resources or countervailing state interests . . . ."

*Id.* at 208.

      Likewise, in this case, GSWP has not made any claims that

it would be unduly burdened by litigating in the Virgin Islands.

The Virgin Islands would certainly have an interest in having

these claims litigated here, as the injured parties are all

Virgin Islands residents or corporations. Given that the alleged

decay of the lumber occurred in the Virgin Islands, and damaged

structures in the Virgin Islands, it would seem that this would

also be the most convenient forum. As GSWP is not the only

defendant in this action, dismissing GSWP from this case might

force the parties in this case to proceed against GSWP in

another forum while simultaneously litigating before this Court.

This piecemeal litigation would assuredly be inefficient and a

net drain on judicial resources. Lastly, GSWP has not adduced

*Whitecap Investment Corp. v. Putnam Lumber & Export Co.*
Civil No. 2010-139
Memorandum Opinion
Page 34

any "countervailing state interest," *id.*, that might be

compromised by proceeding with this litigation in this Court.

    The Court finds that the exercise of personal jurisdiction

over GSWP would be in accord with "notions of fair play and

substantial justice." *Id.* at 205.

    An appropriate order follows.

S\_____

        **Curtis V. Gómez**
        **Chief Judge**