IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| WHITECAP INVESTMENT CORP. d/b/a ) <br> PARADISE LUMBER, ) <br>　　　　　　　　　　　　　　　　　　　) <br>　　　　　　Plaintiff, 　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) <br> vs. 　　　　　　　　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　) <br> PUTNAM LUMBER & EXPORT CO., 　　　　) <br> PUTNAM FAMILY PROPERTIES, INC., 　　) <br> GREAT SOUTHERN WOOD 　　　　　　　　) <br> PRESERVING, INC., MIKE NOBLE, XYZ 　) <br> CORP., JOHN DOE, and JANE DOE, 　　　) <br>　　　　　　　　　　　　　　　　　　　) <br>　　　　　　Defendants. 　　　　　　　　) <br> _____ ) | Civil No. 2010-139 |

**REPORT AND RECOMMENDATION**

Before the Court is the Motion in Limine Regarding Dennis Giuffré's Third Supplemental Report ("Giuffré's 3d Report") [DE 265] filed by Putnam Lumber & Export Company ("Putnam Lumber"), Putnam Family Properties, Inc., ("collectively, "the Putnam Entities") and Mike Noble ("Noble") (Noble and the Putnam Entities are collectively, "Putnam"). Great Southern Wood Preserving, Inc. ("Great Southern") joins in the motion. [DE 275]. Specifically, defendants seek to preclude Whitecap's use of Giuffré's 3d Report pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. Whitecap Investment Corp. d/b/a Paradise Lumber ("Whitecap") opposes the motion. [DE 292]. On May 2, 2013, the District Court referred this motion to the undersigned for a Report and Recommendation.

## I.　　BACKGROUND

The parties are thoroughly familiar with the facts of this matter. Accordingly, the Court limits its discussion to the facts relevant to the instant motion, which relate to the timing of the

supplemental expert report and its content.

On July 6, 2011, this Court entered a Trial Management Order ("TMO"), which provided in pertinent part that "[Whitecap] shall identify its expert witnesses, and produce any expert reports and other information required by Federal Rule of Civil Procedure 26(a)(2) to defendants, on or before July 15, 2012." [DE 34]. On July 16, 2012, Whitecap identified Dennis Giuffré ("Giuffré") as an expert and produced his expert report entitled "Report of a Preliminary Analysis of Economic Damages." Whitecap's Resp. at 6; *id*., Ex. B n.1 [DE 292-2].

On December 6, 2012, this Court entered an Order that modified the TMO in part as follows:

    b.    "[Whitecap] shall produce its experts for deposition on or before January 15, 2013.

    c.    Defendants shall identify their expert witnesses, and produce all expert reports and other information required by Federal Rule of Civil Procedure 26(a)(2) to plaintiff, no later than February 1, 2013. No further extensions of this deadline will be entertained.

    d.    All discovery will be completed by March 1, 2013.

[DE 208]. The December 6, 2012 Order continued the trial date from March 2013 to June 3, 2013.

On January 10, 2013, Putnam and Great Southern deposed Giuffré. *See* Giuffré's Dep. [DE 333]. During the deposition, Putnam's counsel inquired multiple times whether Giuffré was offering any testimony regarding the business valuation of Whitecap, to which Giuffré responded each time in the negative. *See e.g.*, Giuffré's Dep. at 40, 248, 259, 300-01 [DE 333]. Nevertheless, on March 5, 2013 – 233 days after the July 2012 deadline and four days after the

discovery cutoff date – Whitecap produced via email Giuffré's Third Supplemental Report,[1] wherein Giuffré opined for the first time as to the value of Whitecap.[2]  Putnam's Mot., Ex. C [DE 265-3].  Defendants' motion, filed April 1, 2013, seeks to exclude Giuffré's 3d Report as untimely and highly prejudicial.

## II.   ANALYSIS

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that an expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Further, Rule 26(a)(2)(D) provides that "a party must make these [expert] disclosures at the time and in the sequence that the court orders."  *See* FED. R. CIV. P. 26(a)(2), 1993 Advisory Committee's Note (explaining the 1993 amendments to the Rules were intended to "impose[] an additional duty to disclose information concerning expert testimony sufficiently in advance of trial [so] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses"). "Parties are always under an obligation to supplement their contentions, including supplementing expert reports, when it becomes necessary to do so."  *Abbott Labs. v. Lupin Ltd.,* 2011 U.S. Dist. LEXIS 53846, at *7 (D. Del. May 19, 2011) (citing FED. R. CIV. P. 26(e)(1)(A)).  "However, parties may not use their obligation to supplement as an excuse to violate the clear terms of a Scheduling Order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case." *Id*.

---

[1]   Whitecap apparently provided a supplemental Giuffré report to defendants at the time Giuffré was deposed on January 10, 2013, which defendants marked as deposition exhibit 172.  [DE 224]; Giuffré's Dep. at 5, 23 [DE 333].  Giuffré also made further handwritten changes on his initial report, which was marked as deposition exhibit 174 during his deposition.  Giuffré's Dep. at 28 [DE 333].  Defendants have not objected to either of these supplemental reports.

[2]   A March 5, 2012 email indicated Whitecap had served Giuffré's 3d Report on Putnam and Great Southern via mail on March 1, 2012.  Putnam never received the report by mail.  Putnam's Mot. at 5 n.3.

*Whitecap Inv. Corp. d/b/a Paradise Lumber v. Putnam Lumber & Export Co. et al.*
Civil No. 2010-139
Page 4

### A. Burden under Rule 37(c)(1)

"Pursuant to Rule 37(c)(1), the Court has the power to exclude evidence as a sanction for a party's failure to comply with its obligations under the rules, including the specific deadlines and obligations imposed by a scheduling order." *Id.*; *accord Barnes v. Century Aluminum Co.*, 2013 U.S. Dist. LEXIS 42311, at *29 (D.V.I. Mar. 26, 2013). In pertinent part, Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The Third Circuit has not directly "addressed the 'substantial justification' standard." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009). While this case concerns an untimely disclosure, as opposed to a failure to disclose, the definition courts apply considering the latter situation seems appropriate here. In particular, courts have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with [a] disclosure request [or scheduling order]." *Id.* (alteration added) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)). "A party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been [timely] produced." *Tolerico*, 205 F.R.D. at 176 (alteration added).

### B. Exclusion of Untimely Testimony: The *Meyers* Factors

If a party fails to meet its burden of proving substantial justification or harmlessness, the Court has discretion to exclude the expert testimony pursuant to Rule 37(c)(1). *Maynard v. Sugarloaf Twp.*, 2011 U.S. Dist. LEXIS 54679, at *7 (M.D. Pa. May 23, 2011). In *Meyers v.*

*Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977), the Third Circuit first articulated the standard for determining whether to exclude evidence as a sanction for failure to comply with a discovery order.  *Id.*, 559 F.2d at 904-05, overruled on other grounds, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (explaining the Third Circuit "recognized the continuing applicability of *Meyers* [] to a Rule 37 exclusion analysis" in *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 791 (3d Cir. 1994)). In particular, a Rule 37 exclusion analysis is governed by the following factors ("the *Meyers* factors"):

> [1] prejudice or surprise to the party against which the evidence would be admitted, [2] the ability to cure that prejudice, [3] the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, and [4] bad faith or wilfulness on the part of the disclosing party in failing to comply with a court order or discovery obligation.

*Barnes*, 2013 U.S. Dist. LEXIS 42311, at *30 (alterations added & quotation marks omitted) (citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. Pa. 2000)).  In addition, a court should consider the importance of the proposed expert report to the disclosing party. *Barnes*, 2013 U.S. Dist. LEXIS 42311, at *29 (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997)).[3]

---

[3] The Court observes that cases considering whether to exclude an untimely supplemental report from an expert who timely provided a previous report do not necessarily discuss separately the Rule 37 "substantially justified" or "harmless" analysis and the application of the *Meyers* factors to instances where a party fails to meet its Rule 37 burden.  *See e.g., Barnes*, 2013 U.S. Dist. LEXIS 42311, at *29 (considering whether, under Rule 37(c)(1), to strike a "late-filed declaration" of an expert named in plaintiff's original Rule 26 disclosures who provided an expert report during discovery, implicitly finding plaintiff's untimely filing was not substantially justified or harmless under Rule 37, but holding exclusion under the *Meyers* factors was unwarranted); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2012 U.S. Dist. LEXIS 165100, at *13 (M.D. Pa. Nov. 19, 2012) (considering whether, under Rule 37(c)(1), to strike a supplemental report by an expert who provided a report during the discovery period, finding plaintiff's untimely filing was not substantially justified or harmless under Rule 37, and striking the report without consideration of the *Meyers* factors).

Moreover, some cases conflate the Rule 37 "substantially justified" or "harmless" analysis with the sanctions analysis under *Meyers*.  *See e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus.*

The exclusion of evidence is a matter left to the trial court's discretion. *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) ("[T]he imposition of sanctions under Rule 37 is a matter within the discretion of the trial court.") (citation omitted); *accord De La Cruz v. V.I. Water & Power Auth.*, 2010 U.S. Dist. LEXIS 57657, at *2 (D.V.I. June 11, 2010). However, the "remedy of exclusion is considered 'drastic' and should not be imposed where it could frustrate the overarching objective of the Rules, which is to provide substantial justice for litigants." *De La Cruz*, 2010 U.S. Dist. LEXIS 57657, at *2 (citation omitted).

### III.   DISCUSSION

Applying the above standards, the Court concludes Giuffré's 3d Report, and any testimony related thereto, should be excluded.

**A.   Whitecap has not met its burden under Rule 37(c)(1)**

1. Substantial Justification

Whitecap implicitly contends the belated filing of Giuffré's 3d Report is substantially justified, based on the lawsuit filed against it in Superior Court on August 14, 2012 by fourteen customers and "their subsequent plan to file a class action lawsuit." *See* Whitecap's Resp., Ex. A

---

*Co.*, 2012 U.S. Dist. LEXIS 40103, at *11 (D. Del. Mar. 26, 2012)("In determining whether a party's failure was 'substantially justified' or 'harmless,' courts consider" the *Meyers* factors.); *Gautier-James v. Hovensa, L.L.C.*, 2011 U.S. Dist. LEXIS 109756, at *14 (D.V.I. Sept. 27, 2011) ("In determining whether there was a substantial justification for the untimely disclosure and thus whether exclusion is warranted [under Rule 37], courts in the Third Circuit" consider the *Meyers* factors.); *Abbott Labs.*, 2011 U.S. Dist. LEXIS 53846, at *7 (stating whether a failure to disclose is "harmless" requires application of the *Meyers* factors); *but see Maynard v. Sugarloaf Twp.*, 2011 U.S. Dist. LEXIS 54679, at *7 (M.D. Pa. May 23, 2011) (considering the Rule 37 "substantially justified" or "harmless" analysis separate from the *Meyers* factors); *Glielmi v. Raymond Corp.*, 2013 U.S. Dist. LEXIS 7128, *17-21 (D.N.J. Jan. 17, 2013)(same); *Geis v. Tricam Indus.*, 2010 U.S. Dist. LEXIS 144538, at *13-14 (D.N.J. Oct. 6, 2010) (considering whether, under Rule 37(c)(1), to bar an untimely supplemental report of an expert who timely provided his initial report and finding the untimely filing was "substantially justified and harmless" without relying on the *Meyers* factors").

[DE 292-1]. Whitecap does not, however, explain satisfactorily why its expert waited for over six months after that case was filed to change his damage calculation methodology.

The Court finds a reasonable person would not believe that the parties could differ as to whether Whitecap was required to comply with the discovery deadline. Although Whitecap apparently failed to anticipate the impact of the *Chapin* lawsuit on the profitability of its business, any surprise to Whitecap regarding its depreciating business value is not so significant that it substantially justifies the introduction of an entirely new damages claim at this late juncture. Indeed, the record suggests to the contrary, as Whitecap has had notice of this additional lawsuit and the potential impact on its business since at least August 2012.

2.  Harmlessness

While the defendants have been on notice of Giuffré's identity and his purpose, Whitecap has failed to show that the defendants had "sufficient knowledge" of the substance of Giuffré's 3d Report. In fact, the evidence of record indicates that until the filing of Giuffré's 3d Report, the defendants were assured that testimony regarding the value of Whitecap would not be offered. *See* Giuffré's Dep. at 40 ("[A]re you rendering [an] expert opinion[] as to the value of Paradise Lumber? I am not."), 41 ("[Y[ou are not testifying as to the value of Paradise Lumber as an entity, correct? That's my understanding, yes, sir."), 248 ("[Y]ou're not offering any testimony regarding the valuation of Paradise or Whitecap . . . .? No, sir, I'm not . . . you're correct."); 259 ("And your methodology in calculating lost profits . . . did not involve an element of historical profitability of the company over all []? Oh, that's correct.") [DE 333-1]. As a result, the defendants have not had a reasonable opportunity to evaluate and take discovery regarding the opinions expressed in Giuffré's 3d Report, or to retain an expert to offer a report or

testimony in rebuttal. Rendering a business valuation is a complex undertaking, requiring the expert to digest financial and operational data relevant to a company's circumstances as of the relevant dates, to determine the existence of and assign values to assets and liabilities, and to consider and implement different valuation approaches under various possible scenarios. Thus, Whitecap's untimely disclosure of Giuffré's 3d Report cannot be viewed as "harmless."

Because Whitecap failed to meet its burden of proving substantial justification or harmlessness, the Court next considers whether to exercise its discretion and exclude Giuffré's 3d Report pursuant to Rule 37(c)(1).

**B.     The *Meyers* factors favor Defendants**

1.     Prejudice or Surprise

Disclosure of Giuffré's 3d Report constitutes both surprise and prejudice to defendants. During Giuffré's deposition testimony, Giuffré confirmed repeatedly that he would not render an opinion as to the value of Whitecap. As such, there is no question that defendants were surprised by Giuffré's 3d Report identifying a new damages claim greatly exceeding that initially asserted by Whitecap.

Moreover, Whitecap's filing of the report just months prior to trial prejudices defendants' ability to prepare their case for trial and gives Whitecap an unfair advantage. Whitecap's untimely filing of Giuffré's 3d Report is more than a "slight deviation" from the July 15, 2012 deadline for filing expert reports and trial is imminent. *See Paoli*, 35 F.3d at 792 (holding failure to timely file an expert's Rule 26(b)(4) statement was only "a slight deviation from pre-trial notice requirements, and admitting the witness was likely to cause only slight prejudice to the defendants, who were already aware of the basic substance of the witness' testimony").

Moreover, due to the short time to trial, while defendants conceivably could depose Giuffré a second time as to his new report, due to the nature of the changes – which render the 3d Report hardly "supplemental" and in fact wholly change both the magnitude and character of the damages sought – it would be virtually impossible for defendants to procure a rebuttal expert or be otherwise adequately prepared to meet at trial this changed damage theory. Moreover, this Court's December 6, 2012 Order stated in no uncertain terms that it would not entertain further extensions of expert report deadlines and that discovery ended on March 1, 2013. *See Szusterman v. Amoco Oil Co.*, 112 Fed. Appx. 130, 131 (3d Cir. 2004) (affirming district court's decision upholding a magistrate judge's denial of plaintiff's request to locate an expert in light of a court order "warn[ing] [] there would be no further extensions of" discovery or expert report deadlines). In sum, Whitecap cannot raise this new damages claim without severely prejudicing the defendants. *See Bowers v. NCAA*, 564 F. Supp. 2d 322, 335 (D.N.J. 2008) (defining prejudice in the discovery violation context as "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy").

2.  <u>Ability to Cure Prejudice</u>

The "ability to cure prejudice" factor also weighs in favor of defendants as "the prejudice to [defendants] cannot be cured in a timely and cost-efficient manner." *Glielmi v. Raymond Corp.*, 2013 U.S. Dist. LEXIS 7128, at *22 (D.N.J. Jan. 17, 2013). In order to cure the prejudice to defendants, the Court must reopen discovery to allow them the opportunity to re-depose Giuffré and potentially retain a business evaluation expert to perform a valuation of Whitecap. A business evaluation is an expensive and time-consuming undertaking, and involves a number of variables and advanced mathematical formulas depending on the valuation method employed.

*Whitecap Inv. Corp. d/b/a Paradise Lumber v. Putnam Lumber & Export Co. et al.*
Civil No. 2010-139
Page 10

Such an allowance would inevitably result in substantial additional costs and delay in a case that is already expensive and well over two years old.

3. <u>Disruption of the Orderly Business of the Court</u>

The third *Meyers* factor also favors defendants. If Giuffré's 3d Report is allowed, it could result in a substantial delay in starting a trial, which has been scheduled since December 6, 2012. [DE 208].

4. <u>Bad Faith & Wilfulness</u>

The fourth *Meyers* factor does not favor defendants as the Court finds no evidence of bad faith or wilfulness. However, the Court is mindful that Whitecap knew about the lawsuit supposedly triggering the need for Giuffré's 3d Report well in advance of Giuffré's deposition testimony and of the production of his Third Supplemental Report.

**C. Importance of Giuffré's 3d Report to Whitecap**

Whitecap contends Giuffré's 3d Report is important because it "encompasses damages [$80,000,000.00] that were discovered during the discovery process and that are not otherwise accounted for in previous reports because [Whitecap] previously lacked a significant enough basis for submitting a damage report based on its business valuation." Whitecap's Resp. at 7. While Giuffré's 3d Report is important to Whitecap in proving its revised damages claim, excluding the report does not impede Whitecap's ability to prove its losses attributable to the allegedly rotting wood as calculated under its original damage theory.

The Court thus concludes that Whitecap's failure to timely file Giuffré's 3d Report was not substantially justified or harmless. The Court acknowledges that the exclusion of evidence is a "drastic" sanction. *De La Cruz*, 2010 U.S. Dist. LEXIS 57657, at *2. After weighing all the

factors, the Court finds that the Court's scheduling order, the prejudice to defendants, the cost in curing the prejudice, and the need for an orderly trial process weigh in favor of excluding Giuffré's 3d Report.

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the Motion in Limine Regarding Dennis Giuffré's Third Supplemental Report by the Putnam Defendants [DE 265] and joined in by Great Southern [DE 275] be GRANTED.

**Dated:** May 10, 2013                                S\_____
                                                                                  **RUTH MILLER**
                                                                                  United States Magistrate Judge