## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

WHITECAP INVESTMENT CORP. d/b/a
PARADISE LUMBER,

                             Plaintiff,

      v.

PUTNAM LUMBER & EXPORT COMPANY,
et al,

                            Defendants.

CASE NO. 2010/139

Action for Breach of Contract, Breach of Warranty, Negligence, Strict Liability, Indemnity, Contribution, Fraudulent Inducement/Misrepresentation, Civil Conspiracy and Declaratory Judgment

**JURY TRIAL DEMANDED**

## JOINT FINAL PRETRIAL ORDER

The following shall constitute the Final Pretrial Order pursuant to Rule 16(a) of the Federal Rules of Civil Procedure and the Final Pretrial Order shall govern the conduct of the trial of this case. Amendments to this order will be allowed only in exceptional circumstances to prevent manifest injustice.

APPEARANCES:

**Attorneys for Plaintiff Whitecap Investment Corporation
d/b/a Paradise Lumber:**

Christopher Allen Kroblin, Esq.
Shari N. D'Andrade, Esq.
**KELLERHALS, FERGUSON, LLP**
9100 Havensight
Port of Sale Mall, Suite 15 – 16
St. Thomas, VI 00802
Tel: (340)779-2564
Fax: (888)316-9269
chris@kfllp.com

sdandrade@kffklaw.com

**Alex Moskowitz**
Dudley Topper & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St Thomas, VI 00804
Tel: (340) 774-4422
Fax: (340) 715-4400
Email: amoskowitz@dtflaw.com

**Attorneys for Putnam Lumber & Export Company, Putnam Family Properties, Inc. and Mike Noble:**

Robert A. Carlson, Esq.
Lee, Hernandez, Landrum, Garofalo & Blake, APC
100 N. Biscayne Blvd., Suite 605
Miami, FL 33132
Tel:  (305)377-2323
Fax:  (305)377-2320
rcarlson@lee-lawfirm.com

Ravinder S. Nagi, Esq.
Lisa Michelle Kömives, Esq.
BoltNagi, PC
5600 Royal Dane Mall, Suite 21
St. Thomas, VI  00802
Tel:  (340)774-2944
Fax:  (340)776-1639
ravi@vilaw.com
lisa@vilaw.com

**Attorneys for Defendant Great Southern Wood Preserving, Incorporated:**

Daryl Barnes, Esq.
Sunshine S. Benoit
**BRYANT, BARNES & BLAIR, LLP**
1134 King Street, 2nd Floor
Christiansted, VI 00820
Tel: (340)773-2785
Fax: (340)773-5427
dbarnes@bryantbarnes.com
sbenoit@bryantbarnes.com

S. Andrew Kelly (admitted pro hac vice)
Lee M. Hollis (admitted pro hac vice)
Lightfoot, Franklin & White, LLC
400 20th Street North,
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
skelly@lightfootlaw.com
lhollis@lightfootlaw.com

## 1.  NATURE OF THE ACTION AND JURISDICTION OF THE COURT:

On December 29, 2010, the Plaintiff, WHITECAP INVESTMENT CORP. *d/b/a* PARADISE LUMBER ("Whitecap"), brought the instant action against Defendants, PUTNAM LUMBER & EXPORT COMPANY ("Putnam Lumber"), PUTNAM FAMILY PROPERTIES, INC. ("Putnam Family"), GREAT SOUTHERN WOOD PRESERVING, INCORPORATED ("Great Southern") and MIKE NOBLE ("Mr. Noble") for the manufacture, production, and distribution of wood products that were alleged to have been improperly treated, not treated, and/or treated with an improper treatment.  Whitecap submits that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 on the basis that there is complete diversity of citizenship amongst the parties and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

In total, Whitecap brought nine (9) causes of action against Putnam Lumber, Putnam Family, and Mike Noble for: breach of contract, breach of express and implied warranties, negligence, strict liability, indemnity, contribution, fraudulent inducement/misrepresentation, civil conspiracy, and declaratory judgment.  During the course of this litigation, Whitecap's causes of action against Putnam Lumber, Putnam

Family and Mr. Noble for negligence, strict liability, fraudulent inducement/misrepresentation and civil conspiracy were dismissed by this Court.

In total, Whitecap brought eight (8) causes of action against Great Southern Wood Preserving, Inc. for: breach of express and implied warranties, negligence, strict liability, indemnity, contribution, fraudulent inducement/misrepresentation, civil conspiracy, and declaratory judgment.  During the course of this litigation, Whitecap's causes of action against Great Southern Wood Preserving, Inc. for negligence, strict liability, fraudulent inducement/misrepresentation and civil conspiracy were dismissed by this Court.  Great Southern Wood Preserving, Inc.'s Motion for Summary Judgment on Whitecap's remaining claims is pending before this Court.  See Doc. 269.

On March 1, 2012, Putnam Lumber, Putnam Family, and Mike Noble brought cross-claims against Great Southern for contribution and indemnity.  On May 9, 2013, this Court granted Putnam Lumber's and Putnam Family's Motion to Amend their cross-claims which resulted in Putnam Lumber's and Putnam Family's First Amended cross-claims being filed against Great Southern for contribution, indemnity and breach of contract.  Great Southern Wood Preserving, Inc.'s Motions for Summary Judgment on Putnam Lumber's, Putnam Family's, and Mike Noble's cross-claims are pending before this Court.

On March 2, 2012, Putnam Family brought a Counter-claim against Whitecap for breach of contract and unjust enrichment.  Essentially, Putnam Family's Counter-claim against Whitecap is based upon two substantial sales of wood products made by Putnam Family to Whitecap.  These two sales were made by Putnam Family to Whitecap on

August 28, 2009 and November 3, 2009, and are memorialized by invoice numbers 29111 and 29182, respectively.  As of the date of this filing, Whitecap has not remitted payment to Putnam Family for either of these two sales of wood products.

## 2.  FACTUAL CONTENTIONS OF PLAINTIFF:

Plaintiff ("Paradise Lumber" or "Paradise") is a retail lumber supply business on St. John which also sells other various products.  Paradise purchased pressure treated lumber products from Putnam Lumber & Export Company ("Putnam") for resale in its store from around December of 2002 through November of 2009.  The pressure treated lumber products Paradise purchased from Putnam were treated by Great Southern Wood Preserving ("Great Southern") from around July 2003 to sometime in 2009.  The pressure treated lumber was purchased by Paradise for resale to its customers (a/k/a "end users") for use in building decks and for general home construction.  Putnam was well aware of the intended use for the pressure treated products ordered by Paradise, and Paradise believed it was being sold pressure treated lumber fit for that purpose.  Putnam represented to Paradise that it was selling Paradise pressure treated lumber for decking and home construction.

Mike Noble acted as a sales agent for Putnam during the course of Paradise's business relationship with Putnam, and for a part of the time was employed directly by Putnam.  Mr. Noble was very familiar with Paradise's business and represented that he was selling Paradise pressure treated lumber products fit for use in home construction and decking.  Owing to Putnam and Noble's negligence, the pressure treated lumber products

sold by Putnam to Paradise were not fit for the purpose of decking and home construction.

To be building code compliant pressure treated lumber products must be treated to a certain retention level, be tested for quality control, and must be third party inspected. Both the AWPA and ICC approve retention levels for various chemicals used to pressure treat lumber and both require quality control inspections and a third party inspector. Great Southern provided what it calls a Treatment Service Only (TSO) service to the lumber which Putnam sold to Paradise.  Great Southern admits and even claims that TSO treated wood is not tested for quality control and is not third party inspected. Accordingly, none of the wood treated by Great Southern and sold by Putnam to Paradise is building code compliant.

Pressure treated lumber products should typically last at least 30 years in the field. Paradise's customers have experienced premature rotting and decay of the pressure treated lumber products sold to them by Paradise, which Paradise purchased from Putnam.  Some of the products have rotted or decayed only a year or two after purchase while others have rotted in a range of three to five years or more.  Paradise tested a sample set of some of these wood products to confirm the reason they prematurely rotted and it was confirmed that 90% of the wood tested failed to contain adequate levels of pressure treatment.

Great Southern knew all along that the wood it was treating did not comply with the requirements of the American Wood Protection Association, Inc. ("AWPA") or the International Code Council ("ICC") and was not, therefore, building code compliant.

Great Southern nevertheless falsely represented to Putnam and Noble orally, in written communications, and on its invoices and other related sales documents, that the wood was being properly treated to the standard retention levels used for home construction and decking. Those representations were passed on to Paradise who relied on the same. When Paradise reported claims that the wood was prematurely rotting and inquired about the treatment process, Great Southern made representations to Putnam that the wood was treated to proper retention levels and Great Southern intended that those representations be relied on by Paradise. Putnam and Noble also asserted that the wood was treated to the proper retention level. Based on those representations from Great Southern, Putnam, and Noble, Paradise continued to purchase wood products from Putnam and resell those products to its customers who used the products in their homes and for decking..

As a result of the prematurely rotting lumber, Paradise has been subjected to numerous claims and lawsuits from its customers which claims include claims for replacement lumber, labor, loss of use, loss of home valuation, and personal injury. Paradise has settled some of the claims with its own funds. Said claims have tarnished Paradise's reputation and good will in the community and have consequently resulted in a loss of sales of lumber products. Accordingly, Paradise has suffered lost profits for which it seeks damages. Owing to the magnitude of the claims now pending against it, Paradise is no longer a sellable company. Accordingly, Paradise seeks damages for its loss of value as a company which resulted in it being sold improperly treated lumber products. Additionally, Paradise seeks damages in the amount of the cost to replace all the lumber sold to it from Putnam with building code compliant lumber. Because Great

Southern fraudulently, willfully, and intentionally misrepresented that the lumber it treated was being properly treated when Great Southern knew all along that it was not, and because Great Southern knew the products it was treating were to be used in home construction and decking and still misrepresented that they were properly treated with reckless indifference to the significant damages that would occur from the sale of improperly treated wood and the significant risk to human life and safety, Paradise also is entitled to an award of punitive damages to deter and punish Great Southern for its outrageous conduct.  To the extent Great Southern is successful in its claim that Putnam and Noble also knew of the improper treatment, then Plaintiff also seeks punitive damages against Putnam and Noble as well.

Regarding Putnam's counter claim, Paradise does not know if the pressure treated wood sold was properly treated by the new lumber treater used by Putnam.  Paradise requires that Putnam simply test the lumber sold or provide other credible evidence that the lumber products subject to the counterclaim are building code compliant.

Putnam Lumber & Export Company claims that it is not a proper party to this lawsuit because of a change of ownership.  Paradise will show that Putnam Family Properties, Inc. sold Putnam Lumber and Export Company to Putnam Lumber Acquisition Corp. (which subsequently became Putnam Lumber & Export Company. Paradise, however, did business only with Putnam Lumber & Export Company and, thus, Paradise properly sued Putnam Lumber & Export Company.

Putnam Lumber & Export Company has at all times continued its operations with the same employees and in the same manner and location despite the internal change in

ownership.   Putnam Lumber & Export Company's own websites states that it was founded in 1945 and expounds on its rich history.   Moreover, the change in ownership was done in an effort to escape liability with respect to Paradise who was nipping at its heels at the time it entered into the agreement.   Accordingly, Putnam Lumber & Export Company is properly liable for the harm caused to Paradise.   Putnam Family Properties, Inc. is also liable because, inter alia, Putnam Family Properties, Inc. signed an agreement accepting liability, and Putnam Family Properties, Inc, does not dispute its own liability.

### 3.   FACTUAL CONTENTIONS OF DEFENDANTS:

#### a.   Factual Contentions of Putnam Lumber, Putnam Family and Mr. Noble:

At all times relevant to this matter, Putnam Family operated under the trade name "Putnam Lumber & Export Company" and sold wood products to, among others, Whitecap.   Putnam Family sold wood products to Whitecap from December of 2002 through November of 2009.   On April 30, 2010, Putnam Family sold the trade name and substantially all of its assets to an entity known as Putnam Lumber Acquisition Corp. Thereafter, Putnam Lumber Acquisition Corp. began selling wood products under the trade name "Putnam Lumber & Export Company," to various entities, but did not sell any wood products to Whitecap.   Despite the fact that Putnam Lumber Acquisition Corp., who is now known as Putnam Lumber, never had any commercial dealings with Whitecap, it has been named as a defendant in this litigation.   At all times relevant to this litigation, Mr. Noble acted as an independent sales agent with regard to the sales of wood products from Putnam Family to Whitecap.

In general, a vast majority of the wood products sold by Putnam Family to Whitecap, were purchased from and treated by Great Southern.  More specifically, at all times relevant to this matter, Putnam Family purchased treated wood from Great Southern and sold the same to, among others, Whitecap.  In addition, at all times relevant to this matter, Putnam Family also purchased treatment services from Great Southern whereby Putnam Family requested and Great Southern agreed to treat wood products to specific retention levels.  This wood that was treated by Great Southern was also sold by Putnam Family to, among others, Whitecap.

During discovery, Whitecap produced some information which purports to evidence that several of its customers on St. John experienced rotting and decay of wood products that they purchased from Whitecap during March of 2004 through August of 2008.  To that end, Whitecap supposedly investigated the claims submitted to it by these customers and used the information obtained from the investigations as well as information from its own internal files to support its contention that a majority of the wood products at issue were sold to Whitecap by Putnam Lumber.  Information obtained through discovery has shown that Whitecap resolved many, but not all of the customers' claims by providing the customers with replacement materials, labor and/or a credit to their account with Whitecap.   Despite the fact that Whitecap has not resolved all of the customers' claims, Whitecap is nevertheless attempting to recover damages from the Defendants for the customers' claims that it has not resolved, as well as damages from the Defendants for claims that may potentially be brought by its customers at some unknown point in the future.

Moreover, Whitecap alleges that because of the Defendants' actions and/or inactions, it has lost a significant amount of business and that its reputation has been severely damaged. As a result, Whitecap now seeks to hold the Defendants liable and responsible for all of the economic and noneconomic damages that it has allegedly incurred, as well as all of the economic and noneconomic damages that Whitecap may potentially incur at some unknown point in the future.

Information obtained through discovery has evidenced that a vast majority of the wood products sold and treatment services provided by Great Southern for Putnam Family were produced and performed at Great Southern's plant in Jesup, Georgia. Information obtained through discovery has also evidenced that Great Southern experienced a myriad of problems and issues at the Jesup plant, including but not specifically limited to issues and problems with the treatment services being performed there and the treated lumber being produced there.

Ultimately, Putnam Lumber contends that it should not be held liable to Whitecap under any theory of law or equity and that it does not have any responsibility to Whitecap for any damages that Whitecap allegedly suffered or may suffer in the future. Specifically, Putnam Lumber contends that it should not be held liable or responsible to Whitecap because it never sold any wood products to Whitecap during the time period at issue – April of 2004 through August of 2008 (which is when Whitecap's customers supposedly bought the allegedly defective wood from Whitecap). As explained above, Putnam Lumber did not come into existence until April 30, 2010. Additionally, from April 30, 2010 through the present day, Putnam Lumber has never sold any wood

products to Whitecap.  As a result, Putnam Lumber could not have sold any of the wood products at issue to Whitecap.

At all times relevant to this matter, Putnam Family acted purely as a seller of wood products.  Putnam Family has never performed any treatment to wood products it sells.  Rather, Putnam Family has always relied upon others to perform treatment to wood products it sells.  To that end, in the matter at hand Putnam Family purchased treated wood products and treatment services from Great Southern and thereafter sold this treated wood to, among others, Whitecap.   Ultimately, Great Southern, not Putnam Family, was responsible for performing the actual treatment of these wood products.  As explained above, discovery has shown that Great Southern experienced a myriad of problems and issues at the plant where a majority of the wood products at issue were treated, including but not specifically limited to issues and problems with the treatment services being performed there and the treated lumber being produced there.

As a result, Putnam Family contends that it should not be held liable to Whitecap under any theory of law or equity and that it does not have any responsibility to Whitecap for any damages that Whitecap allegedly suffered or may suffer in the future.  Alternatively, Putnam Family contends that if it is found to be liable or responsible to Whitecap, any such liability or responsibility should be borne by Great Southern.   In other words, Putnam Family contends that it should not be held or responsible to Whitecap because any such liability or responsibility would be based entirely upon the actions or inactions of Great Southern.  More specifically, Putnam Family's contends that its potential liability or responsibility to Whitecap would be derived entirely from Great

Southern's:  failure to properly treat the wood products at issue, failure to treat the wood products at issue all-together, and/or treatment of the wood products at issue with an improper treatment.

Mr. Noble contends that he should not be held personally liable to Whitecap under any theory of law or equity and that he does not have any personal responsibility to Whitecap for any damages that Whitecap allegedly suffered or may suffer in the future. Specifically, Mr. Noble contends that he should not be personally liable or responsible to Whitecap because at all times relevant to this matter, Mr. Noble acted as an authorized sales agent on behalf of Putnam Family with regard to the sales of lumber made by Putnam Family to Whitecap.  Indeed, Whitecap even acknowledges and agrees that Mr. Noble was an agent of Putnam Family.  Additionally, Mr. Noble always acted within and never exceeded the course and scope of his authority as a sales agent for Putnam Family. Moreover, throughout the course of this litigation, no evidence was adduced which established:  (1) that Mr. Noble committed any tortious act; (2) that Mr. Noble owed a duty to Whitecap; (3) that Mr. Noble breached an alleged duty he owed to Whitecap; or (4) that Mr. Noble intended to become personally bound to the agreements pertaining to the sales of wood products from Putnam Family to Whitecap.  Accordingly, there simply is no basis for imposing personal liability against Mr. Noble.

### b.  Factual Contentions of Great Southern Wood Preserving, Inc.

Plaintiff Whitecap Investment Corporation d/b/a Paradise Lumber, which is located in St. John, Virgin Islands, purchased treated lumber from Putnam and other wholesalers and in turn retailed the lumber to end users primarily on the island of St.

John.  At the time it was retailed, treated lumber sold by Whitecap did not generally have any label that identified, by name, the entity that treated, distributed or sold it.

Great Southern is in the business of pressure treating and distributing lumber and other products related to the building industry.  Typically, Great Southern purchases finished lumber products from saw mills and, after verifying that the lumber is of the represented quality and moisture content, treats the lumber and affixes a "Yellawood" end tag to the lumber and sells it as a wholesale product to various retailers throughout the United States.  "Yellawood" generally carries a limited express warranty from Great Southern's chemical supplier, the terms of which are set forth on Great Southern's website.

Great Southern also provides "Treatment Services Only" for customers from time to time.  When Great Southern performs Treatment Services Only, the customer, not Great Southern, is responsible for purchasing properly graded and dried wood from saw mills and delivering it to Great Southern.  Furthermore, the customer determines to what level of chemical the wood is to be pressure treated.  Following treatment, the wood is either shipped to a destination of the customer's choice or is picked up by the customer. Great Southern never owns or takes title to the wood; it simply runs the wood through the specified treatment process.

Great Southern neither provides a warranty for, nor affixes its Yellawood tag to, Treatment Services Only wood, as it was not involved in the purchase of the lumber and cannot, therefore, attest to the quality and moisture content of the wood that was delivered to it for treatment.  Wood quality and moisture content can have an impact on

the effectiveness of the treatment process, which is why Great Southern does not warrant the quality of wood it treats without having any control over the quality of wood. [1] Evidence has shown that some of the wood provided by the Putnam entities for treatment by Great Southern was not properly dried, known as kiln wet.   To the extent that premature deterioration was caused by improperly dried wood inhibiting absorption of chemicals, the Putnam entities, not Great Southern would be responsible.

Putnam Lumber and Export Co., which is located in Jacksonville, Florida, sells pressure treated and non-pressure treated lumber to retailers outside the continental United States, including the Virgin Islands.   Great Southern began doing business— providing Treatment Services Only—with Putnam out of its treatment facility in Jesup, Georgia in 2003 and continued to 2009.   Transactions were handled on a case by case basis and typically began when Putnam placed an order for Treatment Services Only over the phone, by fax, or via email.   After Great Southern treated the wood, it was generally shipped to Putnam's Amware warehousing facility near Jacksonville, Florida.   None of this Treatment Services Only wood was affixed with a Yellowood tag or contained any written designation that it was treated by Great Southern.

Great Southern did not know to whom the lumber would ultimately be sold or the ultimate destination of the wood.   Great Southern's role was limited to receiving, treating, and returning the wood to Putnam.   Great Southern did not know the intended use or

---

[1] In the alternative, if any warranty is found to apply to the wood in this action, then it could only be the only warranty that is given regarding wood treated by Great Southern: the limited, written express warranty on Great Southern's website, which Whitecap has stated in its discovery responses applies in this action, and all of the terms, conditions and limitations set forth therein.

application of the lumber.  Once Putnam took delivery of the lumber at its Amware facility, the lumber was comingled with wood treated by other treating service providers, and warehoused until it was sold by Putnam.  Putnam then sold and shipped the wood to numerous lumber retailers around the world, including Whitecap Investment Corp. d/b/a Paradise Lumber.

Whitecap purchased treated lumber from Putnam and other wholesalers during the relevant time period.  At the time it was sold by Whitecap, the treated lumber did not generally have any label that identified, by name, the entity that treated, distributed, or sold it.  And there has been no evidence in this case that Whitecap ever sold any wood that had a Yellawood label affixed to it or, if it did, that any Yellawood has suffered premature deterioration.

Whitecap does not have a strong history of profitable performance.  Beginning in 2007, Whitecap started seeing drops in its lumber sales and overall bottom line.  The beginning of Whitecap's performance decline coincided with the beginning of what has now been documented as being the worst global economic downturn since the 1930's.

Prior to the onset of the alleged premature deterioration issues, Great Southern had no contacts or communications with Whitecap.  To date, Great Southern has never sold any wood to Whitecap, treated any wood for Whitecap, entered into any contract with Whitecap or otherwise done business with Whitecap.  Moreover, Whitecap relied on no information from Great Southern in deciding to purchase treated lumber from Putnam.

Great Southern contends that it did exactly what Putnam asked: it received wood purchased by Putnam and ran it through the requested treatment process.  But because it

did not purchase the wood or inspect it for quality before or after providing Treatment Services Only for Putnam, Great Southern could not attest to or warrant the quality of the treated wood. It simply was not paid to perform such services.  Putnam only paid Great Southern to run the wood through its treatment process and ship it to Putnam's Amware facility in Jacksonville and that is precisely what Great Southern did.

Whitecap has not shown that the wood it alleges is prematurely decaying was treated by Great Southern for Putnam or that it was sold by Putnam to Whitecap. Whitecap has not and cannot show that the premature deterioration was caused by something which Great Southern wrongfully did or failed to do.  Accordingly, there is no basis for imposing liability against Great Southern.

### 4.  ADMISSIONS AND STIPULATIONS:

The parties agree to stipulate to the authenticity of documents produced by any party and to the authenticity of documents produced by third parties pursuant to subpoena.[2]  The parties further agree that all documents generated in the ordinary course of business, whether produced by a party or by a third party in response to a subpoena, qualify as business records under Federal Rule of Evidence, Rules 901 and 902.  The parties reserve their objections based upon relevance, Rule 403, foundation, and hearsay contained within any documents.   The Parties will attempt to agree to the admissibility of as many exhibits as possible prior to trial.

The Parties admit and stipulate that during December of 2002 through November of 2009 Putnam Family sold wood products to Whitecap.

---

[2] The Parties reserve any and all objections to opposing counsel's exhibit lists but will attempt to resolve any objections prior to trial.

The Parties admit and stipulate that during July of 2003 through August of 2009 Putnam Family purchased treatment services from Great Southern and that lumber treated by Great Southern was sold to Whitecap.

5.   **STATEMENT OF DAMAGES**

    a.  **PLAINTIFF:**

Total Pending claims both paid and unpaid is $2,039,040.39

Cost of replacement of lumber in remaining customers' homes = $60,000,000.00 to $80,000,000.00.

Lost Business Valuation = $4,646,931.00 to $5,655,404.00 per Giuffre report and $18,232,569.87 to $13,894,483.33 based on Rourke calculations

Incremental Lost Profits = $800,000.00 to $1,800,000.00.

Loss of employee pay = $90,000.00.

Value of discarded lumber $3,106.00.

Punitive damages in the amount of three times the recovery of any other damages.

Pre and post judgment interests.

Attorneys fees and costs.

    b.  **Putnam Lumber's, Putnam Family's and Mr. Noble's Statement of Damages:**

Putnam Family has incurred damages in the amount of $68,281.42 (sixty-eight thousand, two hundred and eighty-one dollars and forty-two cents) and continues to incur damages due to Whitecap's failure to remit payment to Putnam Family for two large sales of wood products. Specifically, on August 28, 2009 and on November 5, 2009, Putnam Family sold $25,055.40 (twenty-five thousand, fifty-five dollars and forty cents) and

$15,615.36 (fifteen thousand, six hundred and fifteen dollars and thirty-six cents) respectively, worth of wood products to Whitecap.  These two sales of wood products by Putnam Family to Whitecap are memorialized by invoice numbers 29111 and 29182. Invoice numbers 29111 and 29182 explicitly and unambiguously state that "A Finance Charge Of 1.5% Per Month (18% Per Annum) Will Be Charged On Any Amount Due Past The Terms Of The Sale" and that the "NET [is] DUE 60 DAYS AFTER ARRIVAL."  Whitecap accepted delivery of the wood products from Putnam Family with regard to both of these sales.  Additionally, Whitecap never objected to any of the terms or conditions associated with either of these sales.  As a result, as of the commencement of this trial on June 3, 2013, the total amount of money owed to Putnam Family by Whitecap for these two sales is approximately $68,281.42 (sixty-eight thousand, two hundred and eighty-one dollars and forty-two cents), including interest ($25,055.40 plus $17,538.77 in interest on the sale of wood products memorialized by invoice number 29111; and $15,615.36 plus $10,071.89 in interest on the sale of wood products memorialized by invoice number 29182).

In addition, Putnam Lumber, Putnam Family and Mr. Noble may sustain damages in the event that they are found liable and responsible to Whitecap.  As explained above, Putnam Lumber, Putnam Family and Mr. Noble contend that they are not liable or responsible to Whitecap at all.  As also explained above, Great Southern is the entity who performed the treatment to the wood products at issue which were allegedly improperly treated, were  allegedly not treated, or were allegedly treated with an improper treatment. As a result, should any liability or responsibility to Whitecap be imposed upon the

Defendants, this liability or responsibility should be borne, if at all, by Great Southern, not Putnam Lumber, Putnam Family or Mr. Noble.

Finally, Putnam Lumber, Putnam Family and Mr. Noble have incurred substantial fees and costs in this litigation.

### c.  Great Southern Wood Preserving, Inc.'s Statement of Damages:

Defendant Great Southern Wood Preserving, Inc. contests the extent of all of Plaintiff's damages, as well as whether Great Southern is liable for any of Plaintiff's alleged damages.  Additionally, Great Southern has filed a Motion to Exclude Plaintiff's damages expert, Dennis M. Giuffre (Doc. 290).  Great Southern adopts and incorporates all arguments raised in its Motion to Exclude the Testimony of Dennis M. Giuffre and Supporting Memorandum of Law.  See Doc. 290.   If any warranty is found to apply to the wood treated by Great Southern, then the damages sought by Whitecap and/or Putnam are limited to the remedies available in the standard written limited warranty provided on behalf of Great Southern's chemical supplier, Osmose, Inc.

### 6.  AMENDMENTS TO THE PLEADINGS:

### a.  PLAINTIFF

Plaintiff reserves the right to amend the pleadings to conform to the evidence presented at trial and in discovery.  An amended complaint will be needed to reflect the Court's rulings on dispositive motions, but as there are still pending dispositive motions and the court may grant further motions or reverse previous rulings at trial Plaintiff will reserve on filing an amended Complaint until appropriate or order by the Court.

    **b.**  Putnam Lumber, Putnam Family and Mr. Noble reserve the right to amend the pleadings to conform to the evidence presented at trial.

    **c.**  Great Southern Wood Preserving, Inc. reserves the right to amend its answer to conform to the evidence at trial.

**7.   STATEMENT OF LEGAL ISSUES PRESENTED (PLAINTIFF):**

**PLAINTIFF:**

The Parties have briefed the legal issues presented in this action by way of numerous motions submitted to this Court. The Court has ruled on many of those motions and some remain pending. Aside from the legal issues raised in the parties' motion practice, Plaintiff is unaware of any additional legal issues that must be addressed by the Court, however, Plaintiff adopts and incorporates the Defendants' statements of the legal issues. Plaintiff is submitting proposed jury instructions on each of its claims which set forth the elements of each cause of action.

**8.   STATEMENT OF LEGAL ISSUES PRESENTED (DEFENDANT):**

    **a.   Putnam Lumber's, Putnam Family's and Mr. Noble's Statement of Legal Issues Presented:**

Putnam Lumber and Putnam Family have Cross-claims against Great Southern for indemnity, contribution and breach of contract. In addition, Mr. Noble has a Cross-claim against Great Southern for indemnity and contribution. Putnam Family has a Counter-claim against Whitecap for breach of contract and unjust enrichment. Putnam Lumber, Putnam Family and Mr. Noble have also raised several affirmative defenses to the claims brought against them by Whitecap. Each will be addressed in turn.

The legal issues arising in the Cross-claims of Putnam Lumber, Putnam Family, and Mr. Noble against Great Southern for indemnity are:  (1) whether a special relationship exists among and between Putnam Lumber, Putnam Family, Mr. Noble and Great Southern; (2) whether the trier of fact believes the claims of liability and damages of Whitecap; (3) whether the acts or omissions of Great Southern in treating and selling the wood products at issue are the sole source of liability and damages owed to Whitecap; (4) whether Putnam Lumber, Putnam Family and Mr. Noble are wholly without fault;  (5) whether the only source of Putnam Lumber's, Putnam Family's and Mr. Noble's potential liability is vicarious or derivative as a result of the acts or omissions of Great Southern in treating and selling the wood products at issue; (6) whether Putnam Lumber, Putnam Family and Mr. Noble are entitled to indemnification from Great Southern; and (7) whether Putnam Lumber, Putnam Family and Mr. Noble are entitled to reimbursement of any attorneys' fees and costs incurred.

The legal issues arising in the Cross-claims of Putnam Lumber, Putnam Family, and Mr. Noble against Great Southern for contribution are:  (1) whether Putnam Lumber, Putnam Family and Mr. Noble are liable to Whitecap; (2) whether Putnam Lumber, Putnam Family and Mr. Noble intentionally or willfully caused the damages alleged by Whitecap; (3) whether Putnam Lumber, Putnam Family and Mr. Noble are entitled to contribution against Great Southern; and (4) whether Putnam Lumber, Putnam Family and Mr. Noble are entitled to reimbursement of any attorneys' fees and costs incurred.

The legal issues arising in the Cross-claims of Putnam Lumber and Putnam Family against Great Southern for breach of contract are:  (1) whether Great Southern

provided treated lumber to the retention levels requested and agreed upon; (2) whether Great Southern provided treatment services to the retention levels requested and agreed upon; (3) whether Whitecap has sustained damages resulting from the improper treatment of lumber sold and treated by Great Southern; (4) whether Great Southern breached its contracts with Putnam Lumber and/or Putnam Family; (5) whether Putnam Lumber and/or Putnam Family have and will continue to suffer damages as a result of Great Southern's breaches; and (6) whether Putnam Lumber and Putnam Family are entitled to reimbursement of any attorneys' fees and costs incurred.

The legal issues arising in the Counter-claim of Putnam Family against Whitecap for breach of contract are:  (1) whether Whitecap is obligated to render payment to Putnam Family for two large sales of wood products within 60 (sixty) days after receipt of the same; (2) whether a financing charge of 1.5% per month or 18% per annum will be charged when payment is not made within 60 (sixty) days after receipt of the wood products by Whitecap; (3) whether Whitecap was obligated to present all claims regarding the wood products referenced in the two sales within two (2) weeks of receipt of the wood products; (4) whether Whitecap is responsible for all legal and accounting fees incurred in collections; (5) whether Putnam Family sold the wood products referenced in these two sales to Whitecap; (6) whether Whitecap accepted the wood products referenced in these two sales from Putnam Family; (7) whether Whitecap has remitted payment to Putnam Family for the wood products referenced in these two sales; and (8) whether Whitecap is responsible for Putnam Family's attorneys' fees and costs associated with this claim.

The legal issues arising in the Counter-claim of Putnam Family against Whitecap for unjust enrichment are:  (1) whether Whitecap received wood products from Putnam Family with regard to two large sales of wood products; (2) whether Putnam Family incurred costs and expenses associated with the wood products sold to Whitecap with regard to these two large sales of wood products: and (3) whether equity requires that Whitecap reimburse Putnam Family for the costs and expenses Putnam Family incurred with regard to these two large sales of wood products to Whitecap.

The legal issues arising in Putnam Lumber's, Putnam Family's and Mr. Noble's affirmative defenses are:  (1) whether they sold the wood products at issue to Whitecap; (2) whether Whitecap filed to mitigate its damages; (3) whether Whitecap's claims are barred by the applicable Statutes of Limitations and/or Repose; (4) whether Whitecap's claims are barred by the doctrines of laches, waiver, estoppel, unclean hands, the economic loss doctrine, and/or the gist of the action doctrine; (5) whether Whitecap's claims are barred because Whitecap's alleged damages were caused in whole or in part by the independent actions of Whitecap and/or third-parties; (6) whether the damages allegedly suffered by Whitecap were caused by the actions and/or omissions of third-parties over whom Putnam Lumber, Putnam Family and Mr. Noble exercised no control; (7) whether Whitecap and/or any third-party failed to maintain and/or repair the wood products at issue so as to cause any and/or all damage alleged by Whitecap; (8) whether the wood products at issue were reasonably fit for the ordinary or general purpose intended; (9) whether the wood products supplied were in keeping with the appropriate standard of care of other similarly situated entities and individuals; (10) whether Putnam

Lumber, Putnam Family and Mr. Noble are entitled to offset for any amounts Whitecap may receive, or has already received, for its alleged damages; (11) whether the actions, conducts, and/or omissions of third-parties constituted intervening causes which superseded any liability for the alleged actions, conducts and/or omissions of Putnam Lumber, Putnam Family and Mr. Noble; (12) whether Whitecap is barred from pursuing any remedies alleged because it had the opportunity to inspect the wood products at issue and accepted said wood products;  (13) whether Whitecap is barred from recovery in whole or in part by spoiling key evidence in this matter; (14) whether the damages complained of were caused in whole or in part by acts of God over which no party has control or responsibility over; (15) whether the damages claimed are exaggerated, unnecessary, unreasonable and/or not casually related to Putnam Lumber, Putnam Family and Mr. Noble; (16) whether Whitecap failed to allege and/or improperly alleged any entitlement to punitive damages; (17) whether the imposition of punitive damages against Putnam Lumber, Putnam Family and Mr. Noble is unconstitutional; (18) whether Whitecap failed to join all necessary and/or indispensable parties; and (19) whether Whitecap lacks standing to bring its claims.  In addition, an issue arising solely in the affirmative defenses of Putnam Lumber is whether Putnam Lumber ever sold any wood products to Whitecap.  Similarly, an issue arising solely in the affirmative defenses of Mr. Noble is whether Mr. Noble acted within the course and scope of his authority as an agent of Putnam Family throughout all times relevant to this action.

**b.  Great Southern Wood Preserving, Inc.'s Statement of Legal Issues Presented:** [3]

   i.  Whether Great Southern is a seller of goods or service provider;

  ii.  Whether there is privity between Great Southern and Whitecap;

 iii.  Whether there is a contract between Putnam and Great Southern;

   1.  If it is established that a contract existed between Putnam and Great Southern, whether Whitecap is an intended beneficiary of that contract;

  iv.  Whether Great Southern provided any express or implied warranty to Putnam or Whitecap;

   1.  Whether Whitecap has a valid express or implied warranty claim against Great Southern;

   2.  If any warranty was provided whether it is limited to the standard written limited warranty provided by Great Southern on behalf of its chemical supplier, Osmose, Inc.

   v.  Whether there is a "special relationship" between Whitecap and Great Southern;

  vi.  Whether Great Southern can be liable to Whitecap or the Putnam entities for indemnity and contribution where both are alleged to be liable for the claimed damages in related litigation;

 vii.  Whether Great Southern can be liable to Whitecap or the Putnam entities for indemnity and contribution for claims that have not been extinguished;

viii.  Whether Great Southern can be liable to Whitecap where Whitecap has admitted liability for damages (See Doc. 337, p. 6);

  ix.  Whether Paradise's claims for pending and future claims by end users are too speculative and are not ripe for determination in this action;

---

[3] Great Southern disputes whether this court has personal jurisdiction over it.  The court has determined that it has jurisdiction over Great Southern (Docs. 254 and 255), and Great Southern reserves its right to appeal that ruling after final judgment.

    x.   Whether Whitecap's claims for past and future lost profits and lost value are too speculative;

    xi.   Whether Putnam's claims for indemnity and contribution are ripe where Putnam has suffered no damages to date;

    xii.   Whether Whitecap is entitled to the declaratory relief sought;

    xiii.   Whether Whitecap can establish that the wood suffering from alleged premature deterioration was sold by Putnam to Whitecap and was treated by Great Southern; and

    xiv.   Great Southern incorporates by reference the pending motions set forth in section 13 below.

In addition to the legal issues addressed above, the legal issues arising from the affirmative defenses Great Southern Wood Preserving, Inc. asserted in its Answer to Whitecap's Complaint are:

    i.   Whether Great Southern is liable for the things alleged in the Complaint;

    ii.   Whether any conduct on the part of Great Southern was the proximate cause of Whitecap's claimed injuries and damages;

    iii.   Whether the injuries and damages claimed in the Complaint were caused by the acts or omissions of others for whom Great Southern owes no legal responsibility;

    iv.   Whether Great Southern owed any duty of obligation to Whitecap and if it did, whether it breached any duty or obligation owed to Whitecap;

    v.   Whether Whitecap's claims are barred by res judicata, lack of privity, estoppel, waiver, the economic loss rule, laches, unclead hands, accord and satisfaction, or release;

    vi.   Whether Whitecap failed to join necessary and/or indispensable parties;

    vii.   Whether Whitecap failed to mitigate its damages;

viii.    Whether Great Southern is entitled to offsets for any amounts Whitecap may receive, or has already received, for its alleged damages;

ix.    Whether the wood products at issue in this case were sold by Putnam;

x.    Whether the wood products at issue in this case were treated by Great Southern;

xi.    Whether Whitecap's claims are barred by the statute of limitations;

xii.    Whether Whitecap has standing to bring this action;

xiii.    Whether Whitecap failed to allege and/or improperly alleged any entitlement to punitive damages;

xiv.    Whether the imposition of punitive damages against Great Southern is unconstitutional;

xv.    Whether the damages claimed are exaggerated, unnecessary, unreasonable and/or not causally connected to Great Southern;

xvi.    Whether the damages complained of were caused in whole or in part by acts of God over which no party has control or responsibility; and

xvii.    Whether the subject wood carrier any warranty and if it did, whether Great Southern has breached any warranty in this instance, express or implied, and wehther some or all of Whitecap's claims and damages are barred by the express terms of whatever warranty is deemed to apply.

In addition to the legal issues addressed above, the legal issues arising from the affirmative defenses Great Southern Wood Preserving, Inc. asserted in its Answer to Putnam Lumber's, Putnam Family's, and Mike Noble's Cross-claims and Putnam Lumber's and Putnam Family's First Amended Cross-claim:

i.    Whether Great Southern is liable for the things alleged in the Cross-claims;

ii.    Whether any conduct on the part of Great Southern was the proximate cause of Putnam Lumber's, Putnam Family's, or Mike Noble's claimed injuries and damages;

iii.    Whether Putnam Lumber, Putnam Family, or Mike Noble have been injured or harmed in any way;

iv.    Whether Putnam Lumber's, Putnam Family's, or Mike Noble's claims are barred by res judicata, lack of privity, estoppel, waiver, the economic loss rule, laches, unclean hands, accord and satisfaction, or release;

v.    Whether Putnam Lumber, Putnam Family, or Mike Noble failed to join necessary and/or indispensable parties;

vi.    Whether Putnam Lumber, Putnam Family, or Mike Noble has failed to mitigate its/his damages;

vii.    Whether Great Southern owed any duty or obligation to Putnam Lumber, Putnam Family, or Mike Noble;

viii.    Whether there is privity of contract between Great Southern and Putnam and if there was, whether Great Southern breached the contract;

xviii.    Whether Great Southern is entitled to offsets for any amounts Putnam Lumber, Putnam Family, or Mike Noble may receive, or has already received, for their alleged damages;

xix.    Whether Putnam Lumber's, Putnam Family's, and Mike Noble's claims for contribution and indemnity are ripe;

xx.    Whether Putnam Lumber, Putnam Family, and Mike Noble have failed to mitigate their damages;

xxi.    Whether Great Southern misrepresented any material fact to Putnam Lumber, Putnam Family, or Mike Noble;

xxii.    Whether Putnam Lumber, Putnam Family, and Mike Noble have standing to make the claims asserted in their Cross-claims or in Putnam Lumber's and Putnam Family's First Amended Cross-claim; and

xxiii.   Whether the subject wood carried any warranty and if so, whether some or all of the Putnam entities' claims and damages are barred by the express terms of whatever warranty is deemed to apply.

The breach of contract claim is simply another claim for contribution and indemnity because that is the only relief the Putnam defendants seek.  In order for the Putnam entities to have a breach of contract claim for contribution and indemnity, the claim would have to be supported by an express term of the contract, and there is no such term.  Great Southern also submits that the contribution and indemnity claims and cross-claims are equitable in nature and are not to be tried to a jury.

**9.  EXHIBITS:**

   **a.  PLAINTIFF:**

See attached Exhibit list.  Plaintiff incorporates all exhibits identified by Defendants in addition to its own Exhibits.

   **b.  Putnam Lumber's, Putnam Family's and Mr. Noble's Exhibits:**

See the attached Exhibit List of Putnam Lumber, Putnam Family and Mr. Noble (**Exhibit "__"**).  Items designated in **bold** style font are items that Putnam Lumber, Putnam Family and Mr. Noble expect to use and introduce during trial.  Items designated in non-bold font are items that Putnam Lumber, Putnam Family and Mr. Noble may use and introduce during trial.

   **c.  Great Southern Wood Preserving, Inc.'s Exhibits:**

See the attached Exhibit List of Great Southern Wood Preserving, Inc. (**Exhibit ____**).

30

**10. ADDITIONAL DISCOVERY**

    **a.  PLAINTIFF:** None**.**

    **b.  Defendants:** None.

**11. EXPERT WITNESSES:**

    **a.  PLAINTIFF:**

1.  Dennis Giuffre
2.  Al DeBonis
3.  Brian Rourke

    **b.  Putnam Lumber's, Putnam Family's and Mr. Noble's Expert Witnesses:**

Putnam Lumber's, Putnam Family's and Mr. Noble's expert witnesses are:  (1) Ronald Anthony, and (2) Glenn Troast.  Mr. Anthony's and Mr. Troast's reports and curriculum vitaes have already been produced to Whitecap and Great Southern.

    **c.  Great Southern Wood Preserving, Inc.:**

Great Southern Wood Preserving, Inc.'s expert witnesses are: (1) Craig R. McIntyre, Ph.D. and (2) W. Dane Floyd, CPA, CVA, ABV, CFF.  Dr. McIntyre's and Mr. Floyd's reports and curriculum vitaes have already been produced to Whitecap, Putnam Lumber, Putnam Family, and Mike Noble.

**12. NON-EXPERT WTINESSES**

    **a. PLAINTIFF:**

1.  Robert O'Conner
2.  Oscar James
3.  Avis James
4.  Madeline Marsh
5.  Steve Hendren
6.  Carlos DeBlasi

7.  Pam Gaffin
8.  Alyce Jordan
9.  Maurice Chabuz
10. John Fitzgerald
11. Charles Roddy
12. John Stewart
13. Andrew Rutnik
14. Joseph Nogueira
15. Alexandra Ewald
16. Steve Roberts
17. Joe Prentice
18. Paul Boyko
19. Larry Clark
20. Francisco Posada
21. Dave Carlson
22. Phillip Smith
23. David Rosa
24. Johanna Paris
25. Angela Grant
26. Brian Rourke
27. Plaintiff reserves the right to call any other witness named or called by Defendants.
28. Plaintiff reserves the right to introduce Party and 30(b)(6) deposition testimony of all Defendants, including excerpts of testimony from Chad Blizzard, Bill Freeman, and Randy Saffy.

**b. Putnam Lumber's, Putnam Family's and Mr. Noble's Fact Witnesses:**

Putnam Lumber, Putnam Family and Mr. Noble intend to call the following individuals as fact witnesses during trial:  (1) Randall Saffy, (2) Russell Crosby, (3) Mike Noble, (4) Kevin Atchinson, (5) Reese Blanton, (6) William Freeman, (7) Chad Blizzard, (8) Mike Simerly, (9) Brian Rourke, (10) Angela La Place, and (11) Johana Paris.

Putnam Lumber, Putnam Family and Mr. Noble may call the following individuals as fact witnesses during trial:  (1) Colleen Smith, (2) Kimberly Farrell, (3)

Justin Wright, (4) Eric Sizemore, (5) Marty Goff, (6) Carol Rourke, (7) Erich Humbaugh, (8) Jonathan Doran, (9) Madeline Marsh, and (10) Avis James.

### c. Great Southern Wood Preserving, Inc.:

Great Southern Wood Preserving, Inc. intends to call the following individuals as fact witnesses during trial: (1) Bill Freeman and (2) Justin Wright.

Great Southern Wood Preserving, Inc. may call the following individuals as fact witnesses during trial: (1) Chad Blizzard; (2) Russell Crosby; (3) Angela LaPlace; (4) Michael Noble; (5) Johana Paris; (6) Brian Rourke; (7) Judy Rourke; (8) Randall Saffy; (9) Michael Simerly; (10) Corporate representative of Great Southern Wood Preserving, Incorporated; (11) Corporate representative of Putnam Lumber & Export Company; (12) Corporate representative of Whitecap Investment Corp. d/b/a Paradise Lumber; and (13) Corporate representative of Osmose, Inc.

Great Southern Wood Preserving, Incorporated reserves the right to call the following witnesses, if needed: (1) any witness listed by any other party; (2) any witnesses needed for rebuttal or impeachment; (3) any current or former employee of any party; (4) any witness needed to authenticate, explain, interpret or otherwise lay the foundation for exhibits, evidence, audio recordings, or compilations, including but not limited to custodians of record and/or agents; (5) a representative or records custodian from any party or non-party who has been subpoenaed (or yet to be subpoenaed) in this case; (6) any witness whose identify or relevant testimony is not yet known; (7) although Great Southern does not concede admissibility of any testimony, it reserves the right to call anyone who has been deposed in this case or any of the companion cases; and (8) to

the extent that Plaintiff or co-defendant attempts to develop additional or alternative facts or allegations after their witness disclosures or at trial, Great Southern specifically reserves the right to offer rebuttal testimony to address those matters.

Great Southern Wood Preserving, Inc. also reserves the right to use portions of Michael Noble's and Chad Blizzard's depositions, as set forth in Great Southern Wood Preserving, Incorporated's Deposition Designations.

### b.  SPECIAL PROBLEMS:

    **a.  Putnam Lumber, Putnam Family and Mr. Noble submit that there are several outstanding motions currently pending before the Court.**

    **b.  Great Southern Wood Preserving, Inc.**

There following motions for summary judgment, motions in limine, and Daubert motions are currently pending before the Court:

    i.   Defendant Great Southern Wood Preserving, Inc.'s Motion for Summary Judgment (Doc. 269);

    ii.  Defendant Great Southern Wood Preserving, Inc.'s Motion for Summary Judgment on Putnam Family Properties, Inc.'s and Putnam Lumber & Export Company's First Amended Cross Claims (Doc. ___);

    iii. Defendant Great Southern Wood's Motion to Exclude the Testimony of Dennis M. Giuffre and Supporting Memorandum of Law (Doc. 290);

    iv.  [Defendant Great Southern Wood's] Motion to Exclude [the Testimony of Albert DeBonis] (Doc. 291);

    v.   Defendant Great Southern Wood's Motion to Exclude the Testimony of Ronald Anthony and Supporting Memorandum of Law (Doc. 284); and

    vi.  Defendant Great Southern Wood's Omnibus Motion in Limine (Doc. 348).

In addition, the Court has neither adopted nor rejected Magistrate Judge Miller's Report & Recommendation on the Motion in Limine Regarding Dennis Giuffre's Third Supplemental Report (Doc. 343), which was filed by the Putnam entities (Doc. 265) and joined by Great Southern (Doc. 275).

Great Southern submits that the contribution and indemnity claims and cross-claims are equitable in nature and are not to be tried to a jury.

### c.  ESTIMATED LENGTH OF TRIAL:

**PLAINTIFF** – eight days

#### a.  Putnam Lumber, Putnam Family and Mr. Noble:

Putnam Lumber, Putnam Family and Mr. Noble indicate that the trial of this matter will be before a JURY and estimate that the length of the trial will be eight (8) days, inclusive of jury selection.

#### b.  Great Southern Wood Preserving, Inc.:

Great Southern indicates that the trial of this matter will be before a JURY and estimates that the length of the trial will be (8) days, inclusive of jury selection.

#### d.  TRIAL BRIEF AND REQUEST TO CHANGE:

Pursuant to the Magistrate Judge Miller's December 6, 2012, Order (Doc. 208), trial briefs or memorandums pursuant to Local Rule 16.1(c) are due on or before May 24, 2013.

## <u>CONCLUDING CERTIFICATION</u>

We hereby certify by the affixing of our signatures to this Joint Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this order prior to its submission to the court.  Further, it is acknowledged that amendments to this Pretrial Order will not be permitted except where the court determines that manifest injustice would result if the amendment is not allowed.

Respectfully submitted,

Dated: 5-20-13

*/s/ Christopher Allen Kroblin*
Christopher Allen Kroblin, Esq.
Erika A. Kellerhalls, Esq.
Shari N. D'Andrade, Esq.
Kellerhals, Ferguson, Fletcher, Kroblin, LLP
9100 Havensight, Port of Sale, Suite 15 – 16
St. Thomas, VI 00802
Tel: (340)779-2564
Fax: (888)316-9269
*Attorneys for Plaintiff, Whitecap Investment Corp.*
*d/b/a Paradise Lumber*

&

Alex M. Moskowitz, Esq.
Dudley, Topper & Feuerzeig, LLP
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00804
Tel:  (340) 774-4422
Fax:  (340) 715-4400
*Attorneys for Plaintiff, Whitecap Investment Corp. d/b/a*
*Paradise Lumber*

Dated: 5-20-13                    _/s/ Lee M. Hollis, Esq._____
                                 Lee M. Hollis, Esq.
                                 Stewart A. Kelly, Esq.
                                 Lightfoot, Franklin & White, LLC
                                 400 20th Street North
                                 Birmingham, AL, 35203
                                 Tel: (205)581-0700
                                 Fax: (205)581-0799
                                 *Attorneys for Defendant, Great Southern Wood Preserving,
                                 Incorporated*

Dated: 5-20-13                    _/s/ Robert A. Carlson_____
                                 Robert A. Carlson, Esq.
                                 Lee, Hernandez, Landrum, Garofalo & Blake,
                                 APC
                                 100 N. Biscayne Blvd., Suite 605
                                 Miami, FL 33132
                                 Tel: (305)377-2323
                                 Fax: (305)377-2320

Entry of the foregoing Joint Final Pretrial Order is hereby **APPROVED** this

_____ day of _____, 2013.

                                 _____
                                 Judge of the District Court
                                 of the Virgin Islands

ATTEST:
GLENDA L. LAKE, ESQ.
Clerk of Court

By:_____
        Deputy Clerk