**FOR PUBLICATION**

```
               DISTRICT COURT OF THE VIRGIN ISLANDS
                DIVISION OF ST. THOMAS AND ST. JOHN
```

| | | |
|---|---|---|
| WHITECAP INVESTMENT CORP. d/b/a/ PARADISE LUMBER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 2010-139 |
| PUTNAM LUMBER & EXPORT COMPANY; PUTNAM FAMILY PROPERTIES, INC.; GREAT SOUTHERN WOOD PRESERVING, INC.; MIKE NOBLE; XYZ CORP.; JOHN DOE; and JANE DOE, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| GARY CHAPIN | ) ) | |
| Intervenor-defendant. | ) ) | |
| PUTNAM FAMILY PROPERTIES, INC., | ) ) | |
| Cross-claimant, | ) ) | |
| v. | ) ) | |
| GREAT SOUTHERN WOOD PRESERVING, INC., | ) ) | |
| Cross-claim defendant. | ) ) | |
| PUTNAM LUMBER & EXPORT COMPANY, | ) ) | |
| Cross-claimant, | ) ) | |
| v. | ) ) | |
| GREAT SOUTHERN WOOD PRESERVING, INC., | ) ) | |
| Cross-claim defendant. | ) ) | |

**MIKE NOBLE,**                                    )
                                                   )
       Cross-claimant,                 )
                                                   )
       v.                              )
                                                   )
**GREAT SOUTHERN WOOD PRESERVING, INC.,**          )
                                                   )
       Cross-claim defendant.          )
                                                   )
_____)
                                                   )
**PUTNAM FAMILY PROPERTIES, INC.,**                )
                                                   )
       Counterclaimant,                )
                                                   )
       v.                              )
                                                   )
**WHITECAP INVESTMENT CORP. d/b/a**                )
**PARADISE LUMBER,**                               )
                                                   )
       Counterclaim defendant.         )
_____)

**ATTORNEYS:**

**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
**Christopher A. Kroblin, Esq.**
**Shari N. D'Andrade, Esq.**
**Erika A. Kellerhals, Esq.**
Kellerhaals Ferguson Fletcher Kroblin LLP
St. Thomas, VI
    *For the plaintiff/counterclaim defendant Whitecap*
    *Investment Corp. d/b/a Paradise Lumber,*

**Lisa M. Kömives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
    *For the defendants/cross-claimaints Putnam Lumber & Export*
    *Co. and Mike Noble; and for the defendant/cross-*
    *claimant/counterclaimant Putnam Family Properties, Inc,*

**Daryl C. Barnes, Esq.**
**Sunshine S. Benoit, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
**Lee M. Hollis, Esq.**
**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
  *For the defendant/cross-claim defendant Great Southern Wood*
  *Preserving, Inc.*,

**Terri L. Griffiths, Esq.**
Terri Griffiths, Attorney at Law
Carbondale, IL
  *For the intervenor-defendant Gary Chapin*.

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of defendant/cross-claim defendant Great Southern Wood Preserving, Inc. ("GSWP"), for summary judgment on all claims and cross-claims asserted against it.

### I. FACTUAL AND PROCEDURAL BACKGROUND

From in or about 2003 until in or about 2009, GSWP sold treated lumber and provided lumber-treatment services to the defendant/cross-claimant Putnam Family Properties, Inc., then doing business as Putnam Lumber & Export Co. ("Putnam Family"). Putnam Family, a Florida corporation, was a lumber wholesaler. The defendant/cross-claimant Putnam Lumber & Export Co. ("Putnam Lumber"), also a Florida lumber wholesaler, is a successor of Putnam Family. The defendant/cross-claimant Mike Noble ("Noble")

was formerly a salesperson employed by Putnam Family, and now is the president and chief executive officer of Putnam Lumber.

Putnam Family allegedly sold lumber treated by GSWP to the plaintiff, Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber"). Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands.

Paradise Lumber claims to have sold lumber that it had purchased from Putnam Family, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Paradise Lumber further claims that the GSWP-treated lumber prematurely decayed, causing damage to the buildings into which it had been incorporated.

On December 29, 2010, Paradise Lumber initiated this action. Paradise Lumber's complaint (the "Complaint") sets forth eight counts. Count One asserts a claim for breach of contract against the Putnam Defendants. Count Two asserts a claim for breach of warranty against all defendants. Count Three asserts a claim for negligence against all defendants. Count Four asserts a claim for strict liability against all defendants. Count Five asserts a claim for indemnity against all defendants. Count Six asserts a claim for contribution against all defendants. Count Seven asserts a claim for fraudulent inducement and misrepresentation against all defendants. Count Eight asserts a claim for civil conspiracy against all defendants. Count Nine

seeks a declaration that all defendants are liable for the various claims set forth in the previous counts.

On March 1, 2012, Putnam Family, Putnam Lumber, and Noble each filed cross-claims against GSWP (the "Cross-claims"). Each cross-claim asserts two counts. Count One asserts a claim for indemnity. Count Two asserts a claim for contribution.

On March 21, 2013, the Court dismissed Counts Three, Four, Seven, and Eight of the Complaint as against GSWP on the ground that they were barred by the economic-loss doctrine.

GSWP now moves for summary judgment in its favor on Counts Two, Five, Six, and Nine of the Complaint[1] as well as all counts of the Cross-Claims. Paradise Lumber, Putnam Family, Putnam Lumber, and Noble all oppose the motion.

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it

---

[1] GSWP does not seek summary judgment with respect to Count One of the Complaint because, as noted above, it is not named as a defendant in that Count.

shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, the Court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

**A. Count Two of the Complaint: Breach of Warranty**

GSWP argues that it is entitled to summary judgment with respect to Count Two of the Complaint because: (1) it is not a seller of goods, and therefore the Uniform Commercial Code ("UCC") does not apply; and (2) to the extent any warranties were made, they were made only by GSWP to Putnam Family, and not to Paradise Lumber.

### 1. UCC Claims

GSWP argues it is entitled to summary judgment on "any breach of warranty claim asserted by [Paradise Lumber] under the U.C.C. . . . ." (GSWP's Mot. for Summ J. 3.)

The Virgin Islands has adopted the UCC to govern the sales of goods. *See* V.I. CODE ANN. tit. 11A, § 1-101, et seq. (2012). The UCC "applies to transactions in goods". *See* V.I. CODE ANN. tit. 11A, §§ 2- (2012). "Goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . investment securities . . . and things in action." V.I. CODE ANN. tit. 11A, § 2-105(1).

The UCC does not, however, "govern agreements to provide services." *In re Merritt Logan, Inc.*, 901 F.2d 349, 361 (3d Cir. 1990) Where a contract involves both goods and services, the applicability of the UCC hinges on whether the goods or services predominate. *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 676 (3d Cir. 1991). This determination turns on "the purpose or essence of the contract." *Id.* In making this determination, there are at least two critical factors: (1) the relative cost of the materials supplied versus the costs of the labor and (2) the interrelationship of the goods and services to be provided, including whether one is incidental to the other. *See id.; see also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d

737, 743 (2d Cir. 1979) ("A contract is for 'service' rather than 'sale' when 'service predominates, and the sale of items is 'incidental.' ").

GSWP maintains that it did not sell any goods to either Putnam Family or Paradise Lumber. In support of this position, GSWP offers the deposition testimony of William Freeman ("Freeman"), the general manager of GSWP's wood-treatment plant in Jesup, Georgia. Freeman testified that GSWP regularly purchases wood, treats it, and sells it wholesale to various lumber retailers under the brand name "YellaWood." (Tr. of Dep. of Freeman, Sept. 25, 2012, 34-35[hereinafter "Freeman Dep."]). GSWP sells YellaWood only after treating it in accordance with industry standards, and thereafter subjecting it to a rigorous inspection process. (Freeman Dep. 198-200.) YellaWood is also sold with an express warranty. (Freeman Dep. 204.)

GSWP also provides to its customers what is known as "treatment services only." When GSWP performs treatment services only, or "TSO", it does not purchase the wood to be treated. (Freeman Dep. 35-36.) Instead, the customer purchases the wood, and has it delivered to GSWP for treatment. (Freeman Dep. 34-36, 362-64.) Freeman testified that TSO lumber is treated only in accordance with the customer's specifications, and is not tested by GSWP after treatment. (Freeman Dep. 172, 196.)

Freeman further testified that virtually all of the lumber purchased by Putnam Family and resold to Paradise Lumber was of the TSO variety. (Freeman Dep. 76.) Specifically, he estimated that TSO lumber constituted more than ninety-nine percent of the total lumber sold by Putnam Family to Paradise Lumber. (Freeman Dep. 76.) The TSO lumber was typically treated in batches as Putnam Family needed it; there was no general contract or other agreement between GSWP and Putnam Family for the provisioning of TSO lumber. (Freeman Dep. 391-92; *see also* Tr. of Dep. of Mike Noble May 22, 2012, 121-22 [hereinafter "Noble Dep."]) Instead, Putnam Family would typically place an order for TSO lumber, have the untreated lumber delivered to GSWP, then have the lumber returned after treatment. (Freeman Dep. 123, 234-36.)

However, from time to time Putnam Family would purchase YellaWood, when additional lumber was necessary to satisfy an order from Paradise Lumber. (Freeman Dep. 76-77.)

Based on this evidence, GSWP contends that it did not sell any goods to Putnam Family, and thus the UCC does not apply. The Court of Appeals for the Sixth Circuit confronted a similar issue in *Wells v. 10-X Manufacturing Co.*, 609 F.2d 248 (6th Cir. 1979). In that case, the plaintiff, Wells, contracted with the defendant to make a series of chamois cloth hunting shirts. Wells supplied the design, fabric, buttons, labels, patterns, and pattern notes. The defendant, 10-X, under the terms of the

contract, was to "cut, make and finish (the shirts) . . . ." *Id.* at 251.

The shirts produced by 10-X were defective in a variety of ways. Well sued, alleging breach of contract and breach of warranty. The parties disagreed about whether or not the UCC applied to the transaction.

The Sixth Circuit first noted that the contract at issue certainly involved goods. However, the court explained, "the fact that the party supplying a service does so in conjunction with the delivery of goods does not necessarily mean that the transaction comes within the Code [UCC]." *Id.* at 254. The court elaborated that "[w]hile 10-X was to furnish the thread, all other materials involved in the production of the shirt were to be provided by Wells. Wells was in all other respects responsible for the design and development of the shirt." *Id.* at 255. Further, the court noted that "The language used in the contract clearly bespeaks the intention of the parties that 10-X's obligation under the contract was essentially to provide the manpower and machine capabilities." *Id.* The Court also noted that the claim brought against 10-X was not for defective goods, but rather defective performance. *Id.* at 255.

The facts of this case are also similar to *IMI Norgren Inc. v. D&D Tooling & Manufacturing, Inc.*, No. 00 C 5789 (AJS), 2003 WL 21501783 (N.D. Ill. June 25, 2003). In that case, the parties

included a manufacturer of tool and die equipment and a company that heat treated metal products. The manufacturer contracted with the treater to have certain metal components heat-treated. The manufacturer sued for breach of warranty when the treated metal products prematurely decayed.

The district court held that the UCC did not apply to this contract. Specifically, the court noted that "the parties only intended for [the treater] to service goods provided by [the manufacturer]." *Id.* at *3. The treater "did not sell any goods to [the manufacturer]. It did not manufacture the . . . parts. Instead, [the manufacturer] provided these goods . . . only for the [treater] to treat them." *Id.* The Court thus concluded that the "change in physical custody of the goods was only incidental to the transaction," and that therefore the contract was one for services. *Id.* Accordingly, the Court granted summary judgment in favor of the treater on the manufacturer's UCC claim.

*Wells* and *IMI Norgren* differ from the present case, however, in two important respects. First, both cases involved a transactions governed by a single, overarching contract. Second, in neither case did the service providers ever sell any good; they merely took delivery of some raw material, performed a service, and returned the treated product.

In the present case, by contrast, each transaction was entered into by the parties separately, with no overriding

contract. Moreover, in some of these transactions, GSWP in fact sold lumber to Putnam Family.

GSWP argues that the fact that it sold a small quantity of YellaWood to Putnam Family "is of no consequence . . . as there is no evidence that any product other than Treatment Services Only wood was supposedly defective or non-conforming." (GSWP's Mot. for Summ. J. 4 n.3.) Yet, GSWP fails to identify any affidavit, deposition, or other evidence to this effect. Indeed, GSWP's assertion is belied by Paradise Lumber's verified complaint, which alleges that GSWP both "treated and sold wood products" to Paradise Lumber which were defective. (Compl. ¶¶ 46, 53.)

Moreover, to the extent GSWP argues that the services predominated over the goods in its various transactions with Putnam Family, the evidence currently before the Court is insufficient to make such a determination. Although YellaWood undisputedly comprised only a small portion of the total lumber in question, GSWP maintains that each transaction was separate and distinct and not governed by any general agreement. The Court would thus be required to examine each individual transaction in order to determine whether "the purpose or essence of the contract" was to sell goods or services. *Advent Sys.*, 925 F.2d at 676. However, GSWP has neither offered nor identified any evidence describing the various circumstances

surrounding each transaction. Instead, it relies entirely on general, summary testimony about several years of transactions.

As noted above, the movant has the initial burden of showing there is no genuine issue of material fact. *Gans*, 762 F.2d at 342. Here, there is some evidence that some of the defective lumber was sold, rather than merely treated, by GSWP. GSWP has not offered any evidence that might contradict or undermine this evidence. If GSWP did indeed sell some lumber, some of the transactions at issue may be governed by the UCC. Thus, there being a genuine dispute of material fact, the Court will deny GSWP's motion with respect to Paradise Lumber's UCC claims.

### 2. Third-Party Beneficiary

In the alternative, GSWP argues that under either the common law or the UCC, it cannot be liable to Paradise Lumber because Paradise Lumber was not a party to, nor a third-party beneficiary of, any warranties issued by GSWP.

Although ordinarily "a person must be in privity to a contract to sue for damages for breach of such contract, under certain conditions a person may sue as a third party beneficiary to a contract." *Matos v. Nextran, Inc.*, 52 V.I. 676, 684 (D.V.I. 2009) (internal quotation marks and citation omitted). Virgin Islands law recognizes that such a third-party beneficiary relationship may be created in one of two ways.

First, under the UCC, "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty." V.I. CODE ANN. tit. 11A, § 2-318 ("Section 2-318"). However, this provision extends warranties only to those people who are injured "in person." *Paramount Aviation Corp. v. Augusta*, 288 F.3d 67, 75 (3d Cir. 2002) (noting that implicit in Section 2-318 is a clearly-expressed legislative policy choice limiting recovery by third parties to damages for personal injuries).

As GSWP notes, Paradise Lumber has not alleged in its complaint or otherwise that it suffered any personal injuries. Instead, its injuries allegedly arise from payments it made to its customers to settle their claims for injuries. Its customers' injuries, in turn, arose from damage to their property, not their persons. (Compl. ¶¶ 26-28); *see also Hedges v. United States*, Civil No. 2000-03 (RLF), 2003 U.S. Dist. LEXIS 23383 at *11-12 (D.V.I. June 30, 2003) (dismissing warranty claim asserted by purported third-party beneficiary when only injury suffered was to plaintiff's boat, not his person). It would thus appear that Section 2-318 is not applicable here.

Whitecap Investment Corp. v. Putnam Lumber & Export Co.
Civil No. 2010-139
Order
Page 15

Where the UCC does not apply, courts in the Virgin Islands apply instead the relevant Restatement of Laws. *See* V.I. CODE ANN. tit. 1, § 4[2]; *see also Sanchez v. Innovative Tel. Corp.*, Civil No. 2005-45 (CVG), 2007 WL 4800351 at *2 (D.V.I. Nov. 30, 2007). The Restatement (Second) of Contracts recognizes that a third-party may become a beneficiary of, and accrue rights under, a contract "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." RESTATMENT (SECOND) OF CONTRACTS § 302(1) (1981).

In *Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir. 1989), the plaintiff purchased a tool from a tool retailer. The plaintiff sued the tool manufacturer, claiming breach of warranty. The Court of Appeals for the Seventh Circuit held, however, that the warranty issued by the manufacturer did not extend to the plaintiff, explaining:

> [C]ourts have generally held that a third party is not a beneficiary of a sales agreement merely because both contracting parties knew that the product would be resold to the third party, or to a class of which the third party was a member. Even

---

[2] Title 1, Section 4 of the Virgin Islands Code provides, in pertinent part, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." V.I. CODE ANN., tit. 1, § 4 (2012).

> where the subsequent purchaser is mentioned by name in the contract, such a third party is "no more than a known remote buyer" in the absence of further evidence of an intent to benefit the third party.

*Id.* at 911 (citing *Kaiser Aluminum & Chem. Corp. v. Intergsoll-Rand Co.*, 519 F. Supp. 60, 73 (S.D. Ga. 1981)); *see also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (holding that equipment manufacturer could not enforce an agreement between a construction contractor and a subcontractor, despite the fact that the contract specifically provided for installation of the manufacturer's products, and the contracting parties had discussed selection of the manufacturer's equipment at length).

In support of its motion, GSWP directs the Court again to the deposition testimony of Freeman, as well as the deposition testimony of Noble. Freeman testified that GSWP did not include Paradise Lumber as part of the various contracts, nor was it generally aware of the purchasers to whom Putnam Family was reselling the lumber. (Freeman Dep. 315-16.) Noble similarly testified that Putnam Family did not typically inform GSWP of the purchasers to whom the lumber would be resold or include such information in the lumber purchase orders. (Noble Dep. 211.) GSWP does admit, however, that it did eventually become aware that lumber it had treated was being sold by Putnam Family to Paradise Lumber.

Nonetheless, GSWP also points to Freeman's testimony that TSO lumber was not delivered by GSWP with any written warranty, or indeed with any designation that it was treated by GSWP at all. (Freeman Dep. 36-36.) GSWP also directs this Court to a copy of its standard YellaWood lifetime warranty form. That form states that the express warranty contained therein "is valid only in the continental United States" and applies only to "first-owners," meaning "the owner-of-record of the property at the time products treated . . . by [GSWP] were installed." (Paradise Lumber's Ex. 88.) This warranty form does not name or otherwise indicate that intermediate retailers in general or Paradise Lumber in particular were to be included as beneficiaries of the warranty.

This evidence tends to show that GSWP had no intention to give Paradise Lumber any "benefit of the promised performance," RESTATMENT (SECOND) OF CONTRACTS § 302(1)(a) (1981), of any warranty relating to the wood it treated for, or sold to, Putnam Family.

The burden thus shifts to Paradise Lumber to put forward some competent evidence showing that there is a genuine dispute of material fact. To that end, Paradise Lumber directs the Court to two letters and various invoices sent from GSWP to Putnam. One of these letters generally discusses the evolving chemistry of wood treatment. (Paradise Lumber's Ex. 101.) In the second letter, a sales representative of GSWP states that "All TSO

orders through your [Putnam Family's] last order . . . were treated with a 0.15 retention." (Paradise Lumber's Ex. 102.) "0.15 retention" refers to the amount of the treating chemical retained in the lumber after treatment. Paradise Lumber also directs this Court's attention to an invoice issued by GSWP to Putnam Family for the treatment of wood. That invoice states that the wood in question was treated to ".25MCQ," which refers to a particular retention level of a copper-based treatment chemical. (Paradise Lumber's Resp. to Mot. for Summ. J., Ex. B.)

Paradise Lumber also notes that after problems with the lumber first arose, GSWP requested, through Noble, that Paradise Lumber deliver samples of the wood to GSWP so that it could be tested in an effort to determine the cause of the problems. (Paradise Lumber's Exs. 103; 109.)

However, Paradise Lumber has identified no evidence showing that it ever received either of these letters from Putnam Family or GSWP directly. Indeed, Brian Rourke ("Rourke"), an owner of Paradise Lumber and its corporate representative, testified that he was unaware of ever receiving any written or verbal warranty from GSWP. (Tr. of Dep. of Brian Rourke, Aug. 17, 2012, at 278.)

Moreover, the fact that GSWP agreed to help determine the cause of the decay is far from determinative. Paradise Lumber has not identified any evidence that GSWP ever offered to compensate Paradise Lumber for any losses it suffered as a

result of the allegedly defective wood, or engaged in any other course of conduct suggesting it intended for Paradise Lumber to receive the benefit of any warranty. To be sure, the Restatement of Contracts recognizes that "Where an agreement involves repeated occasions for performance . . . any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." RESTATEMENT (SECOND) OF CONTRACTS § 202(4) (1981). However, Paradise Lumber points to no evidence that GSWP regularly responded to issues Paradise Lumber had with the lumber, or otherwise behaved as though Paradise Lumber was entitled to the benefit of any warranty. Indeed, while agreeing to help determine the cause of the decay, GSWP representatives explained that "any material that goes over seas [sic] does not carry a warranty . . . ." (Pardise Lumber's Ex. 103, email from Mike Simerly, GSWP representative, to Noble).

Paradise Lumber has failed to show that there is any genuine dispute of material fact with respect to its claim for breach of warranty as against GSWP. Accordingly, Count Two of the Complaint will be dismissed as against GSWP.

B.  <u>Counts Five, Six, and Nine: Indemnity, Contribution, and Declaratory Relief</u>

As noted above, summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. With respect to Counts Five, Six, and Nine, the Court finds that there is a genuine dispute of material fact. Accordingly, with respect to these counts, GSWP's motion for summary judgment will be denied.

C. <u>Cross-claims: Indemnity and Contribution</u>

As noted above, summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. With respect to Counts One and Two of the Cross-Claims, the Court finds that there is a genuine dispute of material fact. Accordingly, with respect to these counts, GSWP's motion for summary judgment will be denied.

S\_____
Curtis V. Gómez
**Chief Judge**